J. C. MANN, *et al. vs.* C. D. YOUNG, ADMR., *et al.*

MOTIONS.—A motion to strike a motion will not be allowed.

Excepting the single class of cases provided for in Section 445 of the Practice Act of 1873, all final determination of the District courts, must be brought to this court by a writ of error as known to our statute. Section 430, same act.

Such regulation abrogates an appeal, as known to courts of chancery, and would be void under the Organic Act for that reason, but for the comfirmatory legislation of Congress, in Section 1, act of Congress, 7, 1874. It is part of a uniform system of practice in the Territory, adopted by the code and sanctioned by Congress.

Section 2, of said act of Congress, shows such to be the intention of the national legislature.

Under Section 430, Civil Practice Act, 1873, the evidence in an equity case cannot be brought into this court, except by bill of exceptions.

OPINION on merits. A defectively acknowledged deed is as good to the grantee in possession of the granted premises, against the grantor and all persons claiming under him with notice, as if the deed was in all respects formally executed.

A covenant in a deed following upon and connected with the *habendum et tenendum* clause, in the words "and the said B, his heirs and assigns, will warrant and by these presents forever defend" is sufficient to pass an after title.

The act of the Territorial Legislature, perfecting titles to land, approved November 29, 1871, is prospective in its operation and does not apply to this case.

A purchaser is fairly charged with the information which he would have obtained by inquiring into matters brought to his notice.

In equity and perhaps in law, under our statute, the unrecorded deed of a *bona fide* purchaser is good as against the recorded deed of one who is not a *bona fide* purchaser.

Error to Third Judicial District holding terms at Seattle.

*C. D. Emery* and *G. N. McConnaha* for plaintiff in error.

*John J. McGilvra* for defendant in error.

Motion to strike motion.

Opinion by GREENE, Associate Justice.

We will not listen to argument on this motion to strike another motion from the files. True economy forbids piling

one motion on another in this way. If a motion will lie to strike one motion from the files, another motion will lie to strike that from the files, and another to strike that off, and so on *ad libitum*, the whole cob-house of them to be unpiled again, in reverse order, like the house that Jack built, wasting records, delaying business, vexing clients and accumulating costs.

All that could be urged in support of this motion can be urged in opposition to the original motion.

Motion denied, with costs.

Motion to strike evidence.

Opinion by GREENE, Associate Justice.

The evidence sought to be stricken out of this motion is not made part of the record by bill of exceptions. In denying the motion to dismiss the writ of error in this cause, we have felt ourselves obliged to hold, that under section 430 of the Civil Practice Act, we can re-examine no equity cause unless for error in law, and that evidence cannot be brought from the court below, in such a case, unless by bill of exceptions. As this evidence is in no way made part of the record, the motion is allowed.

Motion to dismiss writ.

Opinion by GREENE, Associate Justice.

The defendant moves to dismiss this writ of error, because this cause being a suit in chancery no writ of error lies herein.

No question is made but that this case is of chancery jurisdiction. And it has been brought here, if at all, by the writ of error to which objection is by this motion made.

The writ, so objected to, is sued out conformably to Section 430, of the Civil Practice act of 1873, as construed together with Section 445 of the same act.

Section 430 provides that " every final judgment, order or decision of a District court in a civil action, may be re-examined upon a writ of error in the Supreme court for error in law."

Section 445 provides a statutory appeal from a judgment, to be rendered in form, only in certain cases, but not to be exe-

cuted till final decision of the cause. We are of opinion that these two sections are intended by the legislature to regulate the practice in taking cases of the class called civil actions in the Civil Practice act, up from the District court to the Supreme court, and to define and limit by such regulation, the use and application of the forms and terms, writs of error, and appeals. Under these sections, it is intended that no appeal shall lie, and no proceeding for review shall be denominated an appeal, save the statutory proceeding defined and applied by the provisions of section 445; while it is also intended that a writ of error shall be so amplified in uses as to bring up, not merely causes of common law, but also those of equity jurisdiction. This intention of the legislature is in harmony with the whole spirit of the Civil Practice act, and particularly with its second section which reduces all actions under the act for the enforcement or protection of private rights and the redress of private wrongs to one form, called a civil action.

As to the power of the legislature to carry out by Section 430, their intention therein expressed, to have a process called writ of error, as well avail for the review of an equity as a law decision, there could not be serious doubt if the writ of error, so called, were by that section to operate in an equity cause substantially as an appeal in chancery. But an inspection of Section 430 shows that the process therein mentioned is only to open a cause in the Supreme court for re-examination upon error in law. A chancery cause would therefore come up to this court, not as upon appeal before the passage of that section —facts and law all open to be passed upon *de novo*—but as a common law action heretofore came up, re-examinable only for error in law. Evidently, the writ of error of Section 430, when applied to a chancery case, is not in substance an appeal as known to equity procedure, and is not what was intended by the Organic Act of the territory, to be preserved in substance for the review of equity causes. And the section must be held void, as going beyond the power to regulate, given the legislature in the Organic Act, unless since that act, congress may have so extended the power, or affirmed the act of the legislature, as to

make valid the procedure intended by Section 430 for chancery causes.

Congress has, however, by Section 1, of the act approved April 7, 1874, entitled "An act concerning the practice in territorial courts and appeals therefrom," confirmed the several codes and rules of practice adopted in the respective territories, in so far as they authorize a mingling of law and chancery jurisdiction or a uniform course of proceeding in all cases, whether legal or equitable.

Section 430 is designed to authorize a uniform mode of proceeding in legal and equitable cases. So far as it does so, its provisions are confirmed.

Though in obtaining this uniformity, the legislature has so provided as to preclude this court as a court of equity from considering facts formerly open to consideration, further than as made part of the record by bill of exceptions, and as foundation for a re-examination for error in law, and though such provision may be argued to go beyond the authorizing a uniform course of proceeding, and by unnecessarily substituting one substantive thing for another substantive thing, to fall without the operation of the confirmative act of congress; yet we incline to hold otherwise. And, in this opinion, we are strengthened by provisions of the same confirmative act relative to the review of cases from the territories in the Supreme court of the United States.

The second section of the act of congress distributes all territorial cases for review in the United States Supreme court, into two exhaustive classes.

1. Cases of trial by jury, and

2. All other cases.

Appellate jurisdiction of cases of trial by jury is to be exercised by writ of error, and of all other cases by appeal. But the appeal so called is substantially a proceeding rather by writ of error than by technical appeal; for under it no evidence goes up, but only a statement of facts in the nature of a special verdict, and the rulings of the court on the admission or rejection

58

of evidence when excepted to.    In this confirmative act then, congress expressly provides that the Supreme court of the United States, shall in equity causes, review only such matter as under Section 430 of our code, would in equity causes, by writ of error, be brought before this court for review, and seems directly to contemplate that in the court of record where the case is first heard, a statement of facts in the nature of a special verdict shall be made, and exceptions to rulings on evidence saved preparatory to review in the appellate court, no otherwise than as a case at law.    This is exactly agreeable to the practice marked out by our legislature in Section 430.

Motion denied.

Opinion on merits by Greene, Associate Justice.

The plaintiffs below complained and alleged in substance, that on the 14th day of January, 1862, the University of Washington Territory selected and reserved, for the use of the University, the land in dispute, consisting of about 40 acres in Seattle; that, on the same day, the University, through Daniel Bagley, the President, conveyed the same land to one of the defendants, Robert H. Beatty; that on the 8th September, 1863, Beatty conveyed, for valuable consideration, to John Buckley, by a deed, containing, immediately following the *Habendum et tenendum* clause, these words, "and the said Beatty, his heirs and assigns, will warrant and forever defend," and having no acknowledgment unless one which omitted to state that the grantor acknowledged that he executed the same; that under said deed Buckley took possession of the land, and has since, by himself and vendees, held possession; that, after said conveyance to Buckley, the commissioner of the general land office rejected such land as University reserved land, whereupon, on 6th November, 1864, Bagley made a cash entry of the land, with University money, in the name of Beatty, in order to perfect Beatty's title; that a government patent was issued for the land to Beatty, on 20th December, 1865; that Buckley conveyed certain undivided interests in the land to his co-plaintiffs; that afterwards Beatty, with intent to defraud plaintiffs and defeat their equitable title, conveyed the land, by warranty deed, to

defendant, Mann, without a good and sufficient consideration, and with full notice to, and knowledge by Mann, of said deed from Beatty to Buckley and the other conveyances to Buckley's vendees.    The complaint concludes, by praying in substance that Mann be enjoined from conveying the land, and that his deed from Beatty be decreed void and cancelled.

Mann answered in substance, denying knowledge of the University appropriation of the land, and therefore denying the same; denying that any deed made by Bagley to Beatty was good and operative; denying that Buckley and his vendees continued in possession of said land, and alleging that from the 21st day of January, 1873, until after the bringing of this suit, himself, Mann, has continued in exclusive possession, denying his purchase from Beatty was with intent to defraud; alleging said conveyance was made for a good and valuable and sufficient consideration; denying that said land was purchased by him and conveyance received with notice of any deed from Beatty to Buckley, or from Buckley to Buckley's vendees; and denying that plaintiffs have any legal or equitable title and that his purchase was with intent to defeat such title.

Beatty, separately answering, denies the allegations of the bill; denies that he acknowledged any deed to Buckley, and alleges that Buckley found, after his agreement to purchase, that the University had no title, and surrendered all claim to the land and the possession of it, and refused to pay taxes on it, or to have anything to do with it; that but part of the purchase money was paid; that he Beatty continued in possession until his sale to Mann; that, for the purpose of making a cash entry of the land, he sent his own money to the local land office, and that in return he received the certificate and receipt of the Register and Receiver, and that his sale to Mann was *bona fide* and for good and valuable consideration.

On these issues evidence was taken in the court below, and the cause proceeded to a hearing, whereon, agreeably to Sections 248 and 249 of the Civil Practice Act, the judge found as facts in the nature of a special verdict among other things, substantially as follows :. That Beatty conveyed to Buckley by a deed

of the same form, consideration, description and acknowledgment, as averred in the complaint; that Buckley conveyed to his co-plaintiffs as in the complaint alleged; that Beatty, after his deed to Buckley, acquired title as set forth in the complaint; that subsequently he deeded to Mann, as in the complaint set up, by a deed, duly executed, acknowledged and recorded, and in all respects good and sufficient in form; and that Mann paid nothing for the land and had notice of facts regarding the Buckley deed sufficient to put a prudent man on inquiry. As to other facts found, the judge so found as to support the substantial averments of the complaint.

A decree was rendered in the court below according to the prayer of the complaint, and the case is brought here on writ of error.

In the act of Congress confirming that section of our code which compels plaintiffs in error to adopt this novel process for bringing up a chancery suit, there is no provision for relief in this court against any such injury as might attend a suitor snared by a sudden change in practice. And we, while feeling ourselves powerless to relieve, are very sensible of the embarrassment of the predicament in which plaintiffs in error find their case, now their evidence is all excluded. Our views upon the new practice are perhaps sufficiently disclosed in rendered opinions on motions in this cause. Without the evidence we have no findings of fact before us for review, but must take as conclusive the determinations of fact which the record gives. Simply this general question, then, is before us: What is the law on these found facts?

We are come to the conclusion that the law is be gathered from a consideration of three points :

1.   Whether as against Beatty and his assigns the deed to Buckley is in equity to be considered a good deed.

2.   Whether the deed to Buckley if good, is to be deemed good to pass an after acquired title in Beatty. And,

3.   Whether, if the deed to Buckley be good to pass an after acquired title, Mann is such a purchaser for valuable consid-

eration without notice as to be entitled to protection in equity.

1. As to the first point it is clear that Beatty, having taken Buckley's money for the land and given a deed for it, though defectively acknowledged, and having under it let Buckley into the possession of the land, cannot but be concluded in equity to have intended to execute a good and sufficient deed, and to have intended to convey the land mentioned in it. And so against Beatty and all claiming under him with notice, equity will regard the intended deed as if it were a deed in fact and in all respects good and formal, from the moment of its intended execution. This is rudimentary equity doctrine. (Story's Equity Juris., Sections 649, 789, 790.) Not to hold it applicable in a case like the present would be to make our Territorial "Act relating to deeds" a cover to fraud. In equity this intended deed to Buckley was against Beatty, and Beatty's assigns with notice a good deed. For the purposes of this equity cause we must so regard it.

2. As to the second point, whether the deed to Buckley is such a deed as would avail to vest in him a title afterwards acquired by Beatty, that is to say, a title by estoppel. We do not understand it to be questioned, but that it would do so, were it a deed of general warranty. Authorities are divided as to whether any deed can operate as an estoppel, so as to pass a subsequently acquired title, if it do not contain covenants of general warranty. This vexed question does not call for discussion now, for we are of opinion that this deed contains such a covenant expressed. Immediately following upon and connected with the *habendum et tenendum* clause are these words, "and the said Beatty, his heirs and assigns, will warrant and by these presents forever defend." By these words we must understand that Beatty intended for himself, his heirs and assigns to warrant and defend something, and we must gather his intent from the connection himself gives to this phrase, which would be meaningless if standing alone. We cannot consider the words superfluous or unintelligible while they can serve a purpose and be regarded significant. There is nothing that comes after them to fill them with certain meaning; they must therefore, if

they carry any sense, be pregnant with substance begotten by what goes before. The natural interpretation of them, and the one we adopt, is that Beatty, his heirs and assigns will warrant and defend what he recites himself as doing and having done, and what he recites himself as having granted to Buckley to do, namely, the grant, etc., by himself and the having and holding, etc., by Buckley, his heirs and assigns. If these words do not thus intend a general warranty against all persons whomsoever a perfect warrant and defence against the whole world, by Beatty, his heirs and assigns, to Buckley, his heirs and assigns, of all the estate, possession and enjoyment the deed purports to convey, then we have failed to discover their legal import. In our opinion this was a good deed at law, barring the acknowedgment to vest Beatty's title under patent as against Mann, unless Mann purchased for value without notice. In equity it has, except as against a *bona fide* purchaser without notice, the same virtue as were it duly acknowledged it would have at law.

The statute of the Territory, entitled "An act to make perfect titles to lands in Washington Territory," approved November 29, 1871, has been cited as applicable to this deed, and as causing to pass to Buckley the title of Beatty, patented in 1865, and by relation acquired at the date of cash entry, November, 1864, but as the act of 1871 is prospective as to titles which, when acquired, shall inure to precedent purchasers, it is inoperative here.

3. As to the third point, the judge's finding of fact is, in this case, conclusive. Mann was not a purchaser for valuable consideration. He has no standing in this court, in the face of Buckley's equities. Suppose he had no notice of Buckley's claim, he could not, even then, come into this court to resist it, unless he had paid value for his own deed.

But, aside from his paying nothing for the land, he had notice of facts, in regard to the Buckley deed, sufficient to put a prudent man on inquiry. Equity regards Mann as knowing all he would have known had he prudently pursued such inquiry. Though, as plaintiffs in error contend, the registry acts are to be regarded as designed to protect purchasers from

latent equities, (*Flagg vs. Mann*, 2 Sumner, 556) that is far from considering them as designed to protect purchasers from equities disclosed. It is evidence of fraud, and coupled with failure to pay value, very telling evidence of fraud, for a man to refuse to pursue inquiry, to which, were he honest and prudent, the knowledge he has would clearly send him. It will not do for a purchaser to affect, in a court of equity, to rely on the interested representation of the seller of land that a suspicious circumstance does not concern the title. The seller of land is eager to buy money, and exclaims, "It is nought, it is nought * *; but when he is gone his way then he boasteth."

Our registry statute, by saying that deeds "shall be valid as against *bona fide* purchasers, from the date of filing," has said in effect, not merely that deeds not so filed shall not be valid against *bona fide* purchasers, but also re-asserted, unchanged, the old beneficent law, that deeds not so filed shall be valid against those who are not *bona fide* purchasers. We consider it clear, that a purchaser who is not *bona fide*, cannot, by simply filing his deed, make himself such, nor entitle himself to be so treated. If lack of *bona fides* tainted his getting of his deed, it will taint his filing of it. File his deed if he will, yet in equity, and perhaps in law, under our statute, a *bona fide* prior unrecorded title is good against it. Why should equity interfere in such a case? Mann is not here as a *bona fide* purchaser, and if Buckley and his assigns have any equities, Mann must stand aside.

We conclude, on the whole case, that Buckley's title is good, as against Mann, and that the judgment of the court below must be affirmed.