[No. 8724. Department One. June 16, 1910.]

JULIA DALY, *Appellant*, v. S. RIZZUTTO *et al.*, *Respondents*.[1]

HUSBAND AND WIFE—COMMUNITY PROPERTY—CONVEYANCE BY HUSBAND—VENDOR AND PURCHASER—NOTICE. *Bona fide* purchasers from a married man, describing himself in the deed as single and unmarried, are not charged with notice that it was community property, although some of his associates knew that he was married and diligent inquiry might have disclosed the fact, where for several years the grantor had lived in this state separate and apart from his family in a distant state, the community had never occupied the land or made conveyances, and there was no fact or circumstance which would raise a duty in the grantee to inquire.

SAME—ESTOPPEL OF WIFE—BONA FIDES—BURDEN OF PROOF. Where community property is acquired and sold in this state in defiance of the community rights of the wife in a distant state, proof that the grantee was a purchaser for value and that the title was clear makes out a *prima facie* case of *bona fides* and puts the burden upon the wife to prove notice of her equity.

Appeal from a judgment of the superior court for King county, Ronald, J., entered November 17, 1909, upon granting a nonsuit, dismissing an action to cancel a deed and recover possession of real property, after a trial on the merits before the court. Affirmed.

*Heber McHugh* and *John T. Casey* (*Milo A. Root*, of counsel), for appellant.

*Gill, Hoyt & Frye* and *R. L. Blewett*, for respondents.

CHADWICK, J.—Plaintiff, Julia Daly, and Joseph P. Daly were married at Chicago, Illinois, in December, 1888. About

[1]Reported in 109 Pac. 276.

May 15, 1903, Joseph P. Daly deserted his wife and family and came to Seattle. He did not make his whereabouts known to his wife, but in August, 1904, his wife found him to be working for the Northern Pacific Railway Company as a switchman. From that time on he corresponded with his children, and wrote a few letters to his wife, evidently in answer to letters received from her with reference to the children, and the home in Chicago which was under mortgage and about to be sold. The defendant Daly at all times seems to have desired that his children be sent to Seattle. He finally obtained transportation for them, but plaintiff returned it because she did not want the children to travel alone. He never sent plaintiff any money, although the testimony shows that he was in funds, having paid $650 for a team of horses. His wages were about six dollars a day. Mrs. Daly came to Seattle in April or May, 1905, and stayed about one month, when she returned to Chicago. In August, 1907, she came to Seattle with her children, and has since resided there. Several employees in the Northern Pacific yard testified that they and others employed with Daly knew him to be a married man. On February 20, 1906, defendant Daly purchased from the Hill Tract Improvement Company a lot in the city of Seattle. On November 16, 1906, he conveyed this property, describing himself as a single and unmarried man. On the 17th day of November, 1906, his grantee sold and conveyed the property to the defendants Rizzutto, who are now in possession of the property. Mrs. Daly was in Seattle about one year when, at the suggestion of others that her husband had bought property, she caused inquiry to be made which developed the facts as we have related them. Mrs. Daly brought this action to recover possession of the property, asserting it to be community property. Her husband refusing to join as a plaintiff, was made a defendant. Upon a trial a nonsuit was granted, and plaintiff has appealed. We shall refer to defendants Rizzutto as respondents.

Appellant relies upon the cases of *Dane v. Daniel*, 23 Wash.

379, 63 Pac. 268, and *Adams v. Black*, 6 Wash. 528, 33 Pac. 1074; while respondents rely upon *Sadler v. Niesz*, 5 Wash. 182, 31 Pac. 630, 1030, and § 8771, Rem. & Bal. Code. In *Dane v. Daniel*, it was held that failure to assert a claim to community property held in the name of a husband did not estop the wife from claiming an interest therein, except as against such *bona fide* purchasers as purchased without knowledge of the existence of the marriage relation, or who could not by the exercise of reasonable diligence have obtained such knowledge. In *Sadler v. Niesz*, the wife was denied an interest in the property claimed to be community property. The parties had been married in 1863. They lived together for eight years, when the husband came to the Pacific Coast, taking up his residence in Kitsap county. Sadler's family remained in the East, and the fact that he was married was unknown to his associates and acquaintances. He represented himself to be a widower. In 1883 he acquired the lands which became the subject of the suit. In 1889 Mrs. Sadler appeared and asserted her claim to the land. While the result of that case is certain, the ground upon which the decision should properly be made to rest has been the subject of debate and controversy by the bar, and the occasion of much doubt on the part of the courts. The question has been put to this court in subsequent cases, but it being possible to decide the particular case on other grounds, it has not been answered. It is sufficient to say that, up to this time, no absolute rule has been laid down by this court, but each case has been met by reference to its own facts.

The facts in this case, in our judgment, are wholly insufficient to put respondents or their grantors upon notice. The record title stood in the name of Joseph P. Daly. The community had never occupied the property, nor had there been any conveyances or instruments of record which would indicate any ownership other than that of Daly, and he had, by the most solemn assurance, represented and acknowledged himself to be a single man. It is not shown that respondents

or their grantors knew that Daly was employed as a switch-
man in the Northern Pacific yards, and even though the tes-
timony showed this fact, it would not be enough to put them
upon notice, for it in no way suggested to a stranger any-
thing with reference to his domestic status, or gave the
slightest clue for inquiry upon the subject-matter of the
transfer. In this class of cases, and particularly so since the
enactment of our statute, the term "notice" must be taken in
its full legal sense. It need not be actual, nor amount to full
knowledge, but it should be such "information, from whatever
source derived, which would excite apprehension in an or-
dinary mind and prompt a person of average prudence to
make inquiry." *Bryant v. Booze*, 55 Ga. 438; *Phillips v.
Reitz*, 16 Kan. 396. It follows, then, that it is not enough to
say that diligent inquiry would have led to a discovery, but it
must be shown that the purchaser had, or should have had,
knowledge of some fact or circumstance which would raise a
duty to inquire. Implied notice arises from knowledge and
not from ignorance, unless the law charges notice by registry
or other token. *McCallum v. Corn Products Co.*, 131 App.
Div. 617, 116 N. Y. Supp. 118.

"There must appear to be, in the nature of the case, such a
connection between the facts discovered and the further facts
to be discovered, that the former may be said to furnish a
clue—a reasonable and natural clue—to the latter." *Birdsall
v. Russell*, 29 N. Y. 220, 250.

See, also, *Johnson v. Erlandson*, 14 N. D. 518, 105 N. W.
722.

In *McFarland's Adm'r v. Louisville & N. R. Co.*, 130 Ky.
172, 113 S. W. 82, it was urged, as in this case, that the de-
fendant well knew the facts or "that the said knowledge was
easily accessible to him." The court said:

"The fact that a person could learn of a thing is not equiv-
alent to knowledge, especially where the facts alleged do not
show that there was anything to put him upon notice."

In Michigan it has been held—*Millar & Co. v. Olney*, 69

Mich. 560, 37 N. W. 558—that it is well settled that, if one-
has knowledge or information of such facts as would lead an
ordinarily prudent man to make inquiry as to the rights of
others in property he is about to purchase, he must be charged
with notice of such facts as inquiry would have discovered.
But by the way of emphasizing the fact that there must be a.
leaven of knowledge or information, the court proceeds to,
say:

"This court has never gone to the extent that, solely upon
failure to inquire of the mortgagor as to prior incumbrances-
or prior conveyances, one is to be charged with notice of such
incumbrances or conveyances; and we are aware of no case in
any court that holds to this doctrine. The extent to which
the cases have gone is that, where the fact of a prior convey--
ance or incumbrance is brought to the knowledge of the sub-
sequent purchaser or incumbrancer, he must be held to take
subject to such prior conveyance or incumbrance, or, when.
such circumstances are shown to exist as would put an or-
dinarily prudent business man upon inquiry as to such prior
conveyance or incumbrance, then he is charged with notice of
such facts as upon inquiry he could have ascertained; but
where circumstances alone are relied upon, with no proof of
actual knowledge, they must be of such character that failure
to make the inquiry amounts to bad faith."

In that case, as in this, it was not shown that there was the
least intimation or hint from any source that a third party
had any interest in the property.

When these rules are considered, in connection with the
fact that the husband and wife were living separate and
apart, she in a distant state, and that the property had
been acquired and sold by the husband in defiance of the com-
munity's rights, if it be held that a community exists under
such circumstances, it would seem that respondents exercised
the diligence put upon ordinarily prudent persons, and are
entitled to claim as *bona fide* purchasers under the statute.
This case is easily distinguished from *Dane v. Daniel*, where
the property has been formerly occupied by one of the parties
and his wife. They had made a number of conveyances as

husband and wife, all of which had been recorded, and the other party and his wife had lived for more than ten years in the county and were well known to be husband and wife. The case is more like *Attebery v. O'Neil*, 42 Wash. 487, 85 Pac. 270, where the court said:

"A purchaser must, no doubt, exercise due diligence to ascertain the status of his several grantors at the time they acquired and conveyed the property, but he is not bound to go outside of and beyond the record to ascertain whether any such grantor had an equity in the premises before he acquired his title, and whether he was married or single when such equity was acquired. If such were the case, records and deeds would be of little avail, and the evils resulting from the adoption of such a rule would far outweigh any benefits to be derived from it."

In her reply brief appellant contends that, in any event, the case should be reversed and the respondents put to the proof of *bona fides*. It is not denied that respondents' grantor was a purchaser for value, or that the record title was clear. This raised the presumption that the purchaser was without notice, and put the burden on appellant to prove notice of her equity.

"Proof of such payment, in the absence of proof of notice, or of any fact sufficient in law to charge notice, or sufficient to put the purchaser upon inquiry, will raise the presumption that his purchase was without notice, and the *onus* will be upon the one asserting an equity in the property to prove notice thereof to such purchaser." *Williams v. Smith*, 128 Ga. 306, 57 S. E. 801.

See, also, *Atkinson v. Greaves*, 70 Miss. 42, 11 South. 688, and cases cited; 13 Ency. Evidence, 901.

In *Millar & Co. v. Olney, supra*, it was said:

"We are of the opinion that there is nothing shown in this case that would have put an ordinarily prudent business man on inquiry, and that there was no question of fact to go to the jury for a finding upon this part of the case."

For the reasons assigned, the judgment is affirmed.

RUDKIN, C. J., FULLERTON, MORRIS, and GOSE, JJ., concur.