[No. 50104–1. En Banc. June 28, 1984.]

WILLIAM MIEBACH, *Respondent,* v. DOMINIC COLASURDO, ET AL, *Petitioners.*

VALERIA K. COLASURDO, ET AL, *Petitioners,* v. WASHINGTON CREDIT, INC., ET AL, *Respondents.*

*Edmund J. Wood* and *John F. Jones,* for petitioners.

*Witherspoon, Kelley, Davenport & Toole, P.S.,* by *Kristine A. Chrey,* for respondents.

DOLLIVER, J.—Defendant Valeria Colasurdo seeks rever-

sal of the decisions rendered by the trial court and Court of Appeals which quieted title to her residence in plaintiff William Miebach. In February 1974, Valerie Shearer, daughter of Valeria Colasurdo, executed an installment note in favor of Group Health Credit Union for $1,300 to purchase a Mercedes automobile. Valeria Colasurdo and her husband, Dominic, signed the note as comakers. The note provided that each maker was bound as principal, not as surety, and waived any right to presentment, demand, protest, notice of nonpayment, objection to assignment of the note for collection or to suit thereon. Shearer made two payments to the credit union. Thereafter, the credit union assigned the note to Washington Credit, Inc., a collection agency.

After Washington Credit received a few payments from Shearer, further collection efforts failed. Washington Credit filed suit in Seattle District Court in June 1977 to collect the amount due. Shearer was personally served. The Colasurdos were served by substitute service upon their 15–year–old foster daughter, Samatra Phillips, who was then residing at the Colasurdos' home. Valeria Colasurdo testified she never received this notice. Neither Shearer nor the Colasurdos appeared. A default judgment was entered against the parties, jointly and severally, in August 1977 in the amount of $1,150.24.

Following the filing of the judgment, a praecipe for a writ of execution was issued to Gary Culver, Washington Credit attorney, in June 1978. Culver testified he drove by the Colasurdo residence in an attempt to locate personal property. Pursuant to his usual practice, he searched for personal property (*e.g.,* boats, cars) outside of the house, but made no other inquiry. Unable to locate any personal property, Culver wrote to the sheriff's office requesting the sheriff to levy upon and sell at an execution sale the Colasurdo residence. At that time, the sheriff would rely on an attorney's statement and not independently verify the existence of any personal property.

In June 1978, the sheriff recorded a writ of execution

against the Colasurdo residence. Pursuant to former RCW 6.24.010(2), a notice of the sheriff's sale was posted on the Colasurdo property and published for 5 consecutive weeks in the Daily Journal of Commerce. While admitting she saw the posted notice, Valeria Colasurdo testified she knew of no outstanding debts and believed if there was any problem her daughter would take care of it. Moreover, she considered the notice to be a "scare tactic" used by the finance company toward Valerie and believed if there was a problem involving her home, her mortgage company would personally contact her.

Neither Shearer nor the Colasurdos attended the July 1978 sheriff's sale. At the time of the sale the home had a fair market value of $106,000, in which the Colasurdos had a $77,000 equity. The residence was sold to Washington Credit, the only bidder, for $1,340.02, in full satisfaction of the default judgment. No objections were filed and an order confirming the sale was entered on September 21, 1978. In December 1978, Washington Credit assigned its interest obtained by the sheriff's certification of purchase to Master Mortgages, Inc., for $850. Master Mortgages was a real property holding company solely owned by Gary Culver. Neither Shearer nor the Colasurdos paid the judgment during the 1–year redemption period. The property was conveyed by sheriff's deed to Master Mortgages in August 1979.

In August 1979, plaintiff Miebach, a real estate investor, contacted Culver to inquire generally about the ramifications of sheriff's sales. The two met several times over the next few weeks, during which Miebach expressed interest in purchasing the Colasurdo residence. Miebach knew the property had been sold as a result of a judgment against the Colasurdos. He also knew the Colasurdos were in possession and that improvements were being made to the premises. Miebach believed he only needed to institute an unlawful detainer action. In deciding to purchase the property, Miebach relied on his search of the records and title insurance.

In September 1979, Master Mortgages conveyed the property by special warranty deed to Arctic Trading Company for $15,000. Arctic Trading shared office space with Master Mortgages. Culver then acted as Arctic's attorney and received one–half of its sale profits. In October 1979 Arctic, represented by Culver, conveyed the Colasurdo property by special warranty deed to Miebach for $80,000. On October 31, 1979, Miebach served upon the Colasurdos a 3–day notice to vacate. Valeria Colasurdo testified this was the first time she learned Washington Credit had sued her. The Colasurdos did not vacate the premises. Thereafter, Miebach brought an unlawful detainer action. The Colasurdos answered, asserted legal and equitable defenses, and later brought a separate action to vacate the default judgment and set aside the sheriff's sale. By stipulation, the two actions were consolidated by the trial court.

Dominic Colasurdo died on May 15, 1980. Pursuant to a valid community property agreement, all interest in the residence passed to Valeria Colasurdo.

At trial, testimony addressed whether the 15–year–old foster daughter, Samatra Phillips, was a "person of suitable age and discretion" with whom to leave the complaint and notice. The trial court held Valeria Colasurdo failed to show by clear and convincing evidence that Phillips was not a person of "suitable discretion" and thus the substituted service on the Colasurdos was valid. The court found Valeria Colasurdo had actual and constructive notice of the sheriff's sale, but took no action; the order of confirmation of sale cured all irregularities and no jurisdictional defects were found; and all conveyances were in accordance with Washington law. Miebach was deemed a bona fide purchaser. With a "heavy heart" the court rendered judgment for Miebach and dismissed Colasurdo's action.

Colasurdo appealed. Court of Appeals, Division One, affirmed in a 2–to–1 decision. *Miebach v. Colasurdo,* 35 Wn. App. 803, 670 P.2d 276 (1983). The majority held Colasurdo failed to sustain her burden to vacate the judgment or challenge service and notice requirements. Specifi-

cally, Colasurdo was found to have waived her right to object to any irregularities with the sheriff's sale as the order of conformation was entered in September 1978 and she did not move to set it aside until January 1980. *Miebach,* 35 Wn. App. at 812–13. RCW 6.24.100(4). The majority affirmed the trial court's determination that Miebach was a bona fide purchaser, thus foreclosing equity intervention. Judge Williams, dissenting, examined Miebach's actions and concluded he was not a bona fide purchaser. 35 Wn. App. at 819. He recognized the gross inadequacy of the purchase price—less than 2 percent of fair market value. 35 Wn. App. at 820. Lastly, he viewed the execution sale as being "tainted by unfairness because no true effort was made to satisfy the debt from the Colasurdos' personal property. Equity requires that this sale be set aside." 35 Wn. App. at 821–22.

## I

Appellant asserts the courts below erred in refusing to set aside the sheriff's sale based on the fact Miebach was not a bona fide purchaser, the gross inadequacy of the price paid, and the irregularities surrounding the sale.

Whether Miebach was a bona fide purchaser is a question of mixed law and fact. *Hudesman v. Foley,* 73 Wn.2d 880, 889–91, 441 P.2d 532 (1968). "A bona fide purchaser for value is one who without notice of another's claim of right to, or equity in, the property prior to his acquisition of title, has paid the vendor a valuable consideration." *Glaser v. Holdorf,* 56 Wn.2d 204, 209, 352 P.2d 212 (1960). The notice "need not be actual, nor amount to full knowledge . . ." *Daly v. Rizzutto,* 59 Wash. 62, 65, 109 P. 276 (1910). *See Glaser v. Holdorf, supra* at 209; *Paganelli v. Swendsen,* 50 Wn.2d 304, 308–09, 311 P.2d 676 (1957); 77 Am. Jur. 2d *Vendor and Purchaser* §§ 656–57 (1975).

> "It is a well–settled rule that where a purchaser has knowledge or information of facts which are sufficient to put an ordinarily prudent man upon inquiry, and the

inquiry, if followed with reasonable diligence, would lead to the discovery of defects in the title or of equitable rights of others affecting the property in question, the purchaser will be held chargeable with knowledge thereof and will not be heard to say that he did not actually know of them. In other words, knowledge of facts sufficient to excite inquiry is constructive notice of all that the inquiry would have disclosed."

(Citation omitted.) *Peterson v. Weist,* 48 Wash. 339, 341, 93 P. 519 (1908). *See* 2 J. Pomeroy, *Equity* § 605 (5th ed. 1941).

While our determination of what is sufficient to put an ordinary prudent person upon inquiry notice has varied, *see Hudesman v. Foley, supra; Daly v. Rizzutto, supra; Peterson v. Weist, supra,* a review of the record persuades us Miebach was not a bona fide purchaser. At trial Miebach testified he had been an investor for 23 years and had "ventured into real estate." After the purchase of the Colasurdo home, he had made other sheriff sale investments. One involved a default judgment taken by Washington Credit for an unpaid candy bill of $205.20. *Robeson v. Helland,* 32 Wn. App. 487, 488, 648 P.2d 461 (1982). The Robesons' Bellevue home was sold at a sheriff's sale to the minor children of Gary Culver. Miebach later acquired title for $33,000. Six days later he deeded the property to another party for $41,000. In another, an $80,000 home was sold to satisfy a $1,295.12 debt owed to Washington Credit. *Washington Credit, Inc. v. Houston,* 33 Wn. App. 41, 650 P.2d 1147 (1982), *dismissed and mandated,* 100 Wn.2d 1010 (1983). Title was later transferred to Master Mortgages, who conveyed to Miebach.

Miebach had within his knowledge sufficient facts to put an experienced businessman, as himself, on inquiry notice. When deciding to purchase the Colasurdo residence, he drove by twice and once looked around the house. After knocking on the door, he determined no one was home. He did notice a sign inside the door referring to a permit, allowing for improvements on the property. By examining the records, Miebach was also aware the property had been

sold at less than 2 percent of its fair market value. The suspicions of an ordinary prudent person in Miebach's position would have been aroused by these circumstances. The lone fact Miebach believed the Colasurdos were "holding over", in light of the other circumstances in the case, does not persuade us, as it did the Court of Appeals, he had no notice of the Colasurdos' equitable claim. *Miebach,* 35 Wn. App. at 816. The actions taken by Miebach do not conform with our view of those to be taken by an ordinary prudent investor.

If Miebach had made a reasonably diligent inquiry, he would have discovered the Colasurdos were aware of neither the default judgment nor the sheriff's sale. Early in our history it was said persons cannot be bona fide purchasers if they

> refuse to pursue inquiry, to which, were [they] honest and prudent, the knowledge [they have] would clearly send [them]. It will not do for a purchaser to affect, in a court of equity, to rely on the interested representation of the seller of land that a suspicious circumstance does not concern the title. The seller of land is eager to buy money, and exclaims, "It is nought, it is nought. . . .; but when he is gone his way then he boasteth."

*Mann v. Young,* 1 Wash. Terr. 454, 463 (1874). We hold Miebach had constructive if not actual notice of the Colasurdos' claim of right to or equity in their residence before he acquired title. He was not a bona fide purchaser.

Without the intervening rights of a bona fide purchaser, "[t]here is no question but that equity has a right to step in and prevent the enforcement of a legal right whenever such an enforcement would be inequitable." *Malo v. Anderson,* 62 Wn.2d 813, 815, 384 P.2d 867 (1963) (quoting *Thisius v. Sealander,* 26 Wn.2d 810, 818, 175 P.2d 619 (1946)).

Generally, "mere inadequacy of price, unless so gross as to shock the conscience, is not enough to set aside a judicial sale . . ." However, "when there is a great inadequacy, slight circumstances indicating unfairness will be

sufficient to justify a decree setting the sale aside" on equitable grounds. *Roger v. Whitham,* 56 Wash. 190, 193, 105 P. 628 (1909). *See Lovejoy v. Americus,* 111 Wash. 571, 191 P. 790 (1920); *Triplett v. Bergman,* 82 Wash. 639, 642, 144 P. 899 (1914); *Miller v. Winslow,* 70 Wash. 401, 406, 126 P. 906 (1912); Annot., *Inadequacy of Price as Basis for Setting Aside Execution or Sheriff's Sale—Modern Cases,* 5 A.L.R.4th 794 (1981).

In *Roger,* this court voided a foreclosure sale where a home valued at over $3,000 was sold for $111.32. In *Lovejoy,* parcels of real estate worth in excess of $4,000 were sold at a sheriff's sale for $87.92. The court strongly disapproved the judgment creditor's refusal to collect a debt of $63.15 out of personal property. The sale was set aside because of the

> obviously studied course of the judgment creditor in refusing or failing to pursue those plain, simple and adequate ways to collect, constitute in part that unfairness which, coupled with the shockingly inadequate price for which they purchased at the execution sale, fully warranted respondents in their appeal to a court of equity for relief . . .

*Lovejoy v. Americus, supra* at 575.

Here, too, there was no true effort to satisfy the default judgment from personal property or even to discover what personal property might be available. *Miebach,* 35 Wn. App. at 821 n.12 (Williams, J., dissenting). *See* RCW 6.04-.035 (Laws of 1981, ch. 329, § 4, p. 1547). Now, however, a statute requires the judgment creditor to exercise due diligence to ascertain if the judgment debtor has sufficient nonexempt personal property to satisfy the judgment with interest. Due diligence

> includes but is not limited to the creditor or the creditor's representative personally visiting the premises, contacting the occupants and inquiring about their relationship to the judgment debtor, contacting immediate neighbors of the premises, and searching the records of the auditor of the county in which the property is

located to determine if a declaration of homestead or nonabandonment has been filed by the judgment debtor. RCW 6.04.035(2). The statute sets forth the standards required to eliminate any possibility one's home will be sold to satisfy a small debt. Although these are statutory requirements, they are also standards which will be imposed by this court even in the absence of a statute. While the parties complied with the then–existing notice requirements of RCW 6.24.010 (sheriff's sales) and RCW 6.24.140 (redemption), this is not enough. We will not allow Valeria Colasurdo's home to be taken for a pittance when surrounded by the circumstances of inequity in this case. The sheriff's sale is set aside.

## II

Colasurdo asks the default judgment to be voided for lack of service or because substitute service was not made upon a person of suitable age and discretion.

JCR 4(e)(13) provides in part, "[s]ervice shall be made . . . to the defendant personally, or by leaving complaint and notice at the house of his usual abode with some person of suitable age and discretion then resident therein." Although there was conflicting testimony about the suitability of Phillips to receive service of process, the trial court held the Colasurdos were properly served by substitute service upon Phillips who was a person of suitable age and discretion. Furthermore, the court found that Phillips, although a "troubled and rebellious child, whose academic achievements were below the level of [her] school grade . . .", was talented, familiar with the court system, and had an appreciation for the consequences of violating the law. The Court of Appeals, upon review of the record and an analysis of other states' case law, found no error. *Miebach*, 35 Wn. App. at 808. We concur with the Court of Appeals that the trial court did not abuse its discretion and made no error in finding Samatra Phillips to be of "suitable age and discretion" to receive service of process.

III

Colasurdo also contends the redemption notice provision, RCW 6.24.145, should apply retroactively. In 1981, the Legislature enacted RCW 6.24.145, Laws of 1981, ch. 329, § 6, p. 1549. This statute requires a sheriff's sale purchaser to send notice every 2 months during the redemption period by certified mail, return receipt requested, and by first class mail to the judgment debtor informing him of his right to redeem, the time remaining in which to exercise this right, and the consequences if he chooses not to redeem. If the purchaser fails to comply with the notice requirements, the redemption period extends 2 months for every notice missed.

The Court of Appeals noted the remedial nature of RCW 6.24.145, which favors a presumption of retroactivity. *Macumber v. Shafer,* 96 Wn.2d 568, 570, 637 P.2d 645 (1981). However, the court determined that because the statute affected existing (vested) rights and was written in the present and future tenses, it must be presumed to operate prospectively only. *Miebach,* 35 Wn. App. at 812. Colasurdo asserts remedial statutes under appropriate factual circumstances may be applied retroactively, even though existing rights are affected. *See, e.g., Johnson v. Continental West, Inc.,* 99 Wn.2d 555, 663 P.2d 482 (1983) (provision of Tort Reform and Products Liability Act which preserved common law right of indemnity applied retroactively); *Macumber v. Shafer, supra* (increase in homestead exemption amount applied retroactively to debts incurred prior to the amendment). Furthermore, Colasurdo contends Miebach's reasonable expectations would not be disturbed by retroactive application of the statute, as he expected difficulty in establishing his right to the Colasurdo property. *In re Santore,* 28 Wn. App. 319, 324–25, 623 P.2d 702 (1981).

Where a retroactive application is not expressly provided for in a statute, as here, generally it should not be judicially implied. *Everett v. State,* 99 Wn.2d 264, 270, 661 P.2d 588 (1983). Statutes generally operate prospectively

unless remedial in nature. A statute is remedial when it relates to practice, procedure, or remedies and does not affect a substantive or vested right. *Johnston v. Beneficial Management Corp. of Am.*, 85 Wn.2d 637, 641, 538 P.2d 510 (1975). However,

> a right cannot be considered a vested right, unless it is something more than such a mere expectation as may be based upon an anticipated continuance of the present general laws: it must have become a title, legal or equitable, to the present or future enjoyment of property . . .

*Gillis v. King Cy.*, 42 Wn.2d 373, 377, 255 P.2d 546 (1953) (quoting 2 T. Cooley, *Constitutional Limitations* 749 (8th ed. 1927)). *See* 2 C. Sands, *Statutory Construction* § 41.06 (4th ed. 1973).

While RCW 6.24.145 has a remedial aspect, retroactive application would severely impinge upon the vested right given with an order of confirmation. RCW 6.24.100(4) provides such an order "shall be a conclusive determination of the regularity of the proceedings concerning such sale as to all persons in any other action, suit or proceeding whatever." *Compare In re Spokane Sav. Bank,* 198 Wash. 665, 672, 89 P.2d 802 (1939) ("[a]fter confirmation of a judicial sale, the rights of the purchasers are vested, and nothing except fraud or mistake will avoid the sale") *with Bonded Adj. Co. v. Helgerson,* 188 Wash. 176, 178, 61 P.2d 1267 (1936) ("a certificate of sale executed by a sheriff does not vest title"). *See Severson v. Penski,* 36 Wn. App. 740, 744, 677 P.2d 198 (1984). We decline to apply RCW 6.24.145 retroactively.

## IV

Finally, Colasurdo argues the former notice provisions for a sheriff's sale, RCW 6.24.010, and the lack of notice provisions for a right to redeem, RCW 6.24.140, deprived her of due process of law. As we have decided this case on other grounds, we need not reach the constitutional arguments. *Senear v. Daily Journal–American,* 97 Wn.2d 148, 152, 641 P.2d 1180 (1982).

We reverse and set aside the sheriff's sale; we affirm the

default judgment; and we decline to apply RCW 6.24.145 retroactively.

WILLIAMS, C.J., and ROSELLINI, STAFFORD, UTTER, BRACHTENBACH, DORE, and DIMMICK, JJ., concur.

PEARSON, J., concurs in the result.

Reconsideration denied August 21, 1984.