[No. 53689-9. En Banc. February 18, 1988.]

CASA DEL REY, *Respondent,* v. RICHARD S. HART, ET AL, *Defendants,* R. REID PARMERTER, *Petitioner,* CASA DEL REY ASSOCIATES, ET AL, *Respondents.*

*Murphy, Elgot & Moore,* by *Mark S. Elgot,* for petitioner.

*Cohen & Kaplan,* by *Kenneth B. Kaplan,* for respondents.

GOODLOE, J.—In this case the Court of Appeals affirmed the trial court's order quieting title to the Casa del Rey Apartments in the respondents. The case is before this court on discretionary review. We affirm.

Ralph Bullock and Edward Grubbe purchased the Casa del Rey Apartments from Homer and Maureen Fairfield in 1976. Although the deed and original promissory note

stated that the property was to be transferred to Bullock and Grubbe as their separate estates, the contract was later reformed to indicate that the apartments were indeed the community property of Ralph and Donna Bullock and Edward and Linda Grubbe. The Bullocks and the Grubbes transferred the Casa del Rey Apartments to the Casa del Rey Limited Partnership in March 1978. The building was later sold to its present owner, Casa del Rey Associates, a Washington limited partnership.

Petitioner, R. Reid Parmerter, derived his purported interest in the property from a claim for past due child support owed by Edward Grubbe. In February 1973, Frances May Calhoun obtained a judgment ordering Edward Grubbe to pay child support in the amount of $150 per month retroactive to February 1, 1972, for a child born out of wedlock. On February 28, 1978, Ms. Calhoun assigned the judgment to John Flynn, who promised to pay her $8,000 therefor, but apparently he has not done so. On March 2, 1978, Flynn used the assigned judgment to execute against Grubbe's interest in the Casa del Rey Apartments for $14,028, which he calculated was then owed under the judgment. Flynn, an attorney, also presented the sheriff with a letter, which stated:

I have no knowledge of any personal property in King County of the judgment debtor Edward C. Grubbe.

Exhibit 42d. No evidence was submitted to show that Flynn actually searched for personal property or separate property Mr. Grubbe might have owned.

On March 7, 1978, the King County sheriff filed a levy of execution against the Casa del Rey Apartments. The Grubbes and the Bullocks sold the apartments to the Casa del Rey Limited Partnership on March 21, 1978; the sale was recorded on March 24, 1978. The limited partnership paid the Grubbes and the Bullocks $82,000 and assumed a note for $208,000. On April 14, 1978, the sheriff sold Mr. Grubbe's interest in the apartments to satisfy the Calhoun judgment. Since Flynn was the sole bidder at the sale, the

property was "sold" to him for $14,125.85, the amount due on the judgment plus costs. Thus, Flynn acquired the property having expended only the minimal costs of execution.

Parmerter acquired rights to the Lieurance judgment, another debt owed by Mr. Grubbe. On the basis of this interest he redeemed Mr. Grubbe's interest in the Casa del Rey Apartments from Flynn for $14,172.85 on May 3, 1978. Flynn returned in excess of $11,000 of this sum to Parmerter when it appeared that litigation would be likely.

In June of 1978, the Casa del Rey Limited Partnership attempted to redeem the Calhoun judgment for a sum of $670, alleging that this was the extent to which the judgment had been reduced to a sum certain.

On May 20, 1980, the trial court granted a summary judgment quieting title in the Casa del Rey Limited Partnership. The trial court held the sheriff's sale invalid because the judgment on which it was based had not been reduced to a sum certain and because neither the Calhoun judgment nor the Lieurance judgment created a lien against the property, having issued against a *former* marital community of Edward Grubbe and his previous wife. In addition, the trial court held that the partnership had properly redeemed its interest by tendering $670 ($450 plus interest) to the sheriff.

In December 1981, after title was quieted, the Casa del Rey Limited Partnership sold the apartments to Casa del Rey Associates for $760,000. Casa del Rey Associates had actual knowledge of claims against the property and entered into an indemnity agreement to protect itself against those claims. Thus Casa del Rey Associates was not a bona fide purchaser.

The Court of Appeals reversed the trial court's decision, finding that each month's child support obligation became a separate and final judgment when it accrued and as such was sufficiently certain in amount to support a levy and execution. The Court of Appeals held that the total amount

due on the obligation could be collected by levy and execution against the Casa del Rey Apartments, *if* Mr. Grubbe's interest therein were derived from his "earnings and accumulations" pursuant to RCW 26.16.200, and remanded the case for trial to determine whether Mr. Grubbe's interest in the Casa del Rey was an earning and accumulation of Mr. Grubbe for purposes of RCW 26.16.200. *Casa del Rey v. Hart,* 31 Wn. App. 532, 542, 643 P.2d 900, *review denied,* 98 Wn.2d 1006 (1982).

On remand, the trial court held that no earning and accumulation of Mr. Grubbe was used in the acquisition of the Grubbe interest in the Casa del Rey Apartments, that the Grubbe interest in the apartments was not itself an earning and accumulation of Mr. Grubbe, and that the Grubbe interest in the apartments was acquired entirely through the extension of community credit. The court therefore ordered that title to the Casa del Rey Apartments be quieted in the Casa del Rey Limited Partnership and its successors in interest. The Court of Appeals affirmed in *Casa del Rey v. Hart,* 46 Wn. App. 809, 732 P.2d 1025 (1987). We affirm on other grounds.

Several theories were advanced to support the proposition that Edward Grubbe's interest in the Casa del Rey Apartments could be reached to satisfy the Calhoun judgment for past due child support obligations despite the community nature of the property. We decline to reach those issues, however, because we find that it would be inequitable to uphold the sheriff's sale under the facts of this case.

In *Miebach v. Colasurdo,* 102 Wn.2d 170, 685 P.2d 1074 (1984), we held that a sheriff's sale may be set aside on equitable grounds where (1) the buyer or his successor is not a bona fide purchaser, (2) the price paid for the property is grossly inadequate, and (3) there are "irregularities" surrounding the sale, such as a failure on the part of the creditor to seek satisfaction of the debt from personal property before executing against real property. All three of these conditions are satisfied in the present case.

In *Miebach,* Valeria Colasurdo received notice that her home would be sold at a sheriff's auction to satisfy a judgment against her daughter on a note which Valeria Colasurdo had signed as a comaker. She took no action and did not appear at the sale. The home was sold at the auction to the collection agency that held the judgment. No objections were filed and an order confirming the sale was entered. The collection agency then assigned its interest to a real estate holding company. The property was not redeemed within the 1–year redemption period, so it was conveyed by sheriff's deed to the real estate holding company. Miebach purchased the home from the real estate holding company, knowing that it had been sold for a fraction of its value to satisfy a judgment and that the Colasurdos were in possession. The trial court found that:

> Valeria Colasurdo had actual and constructive notice of the sheriff's sale, but took no action; the order of confirmation of sale cured all irregularities and no jurisdictional defects were found; and all conveyances were in accordance with Washington law.

*Miebach,* at 174. The court also found that Valeria Colasurdo had waived her right to object to irregularities in the sheriff's sale because she did not move to set aside the sale until more than a year after it was confirmed. Nevertheless, this court set aside the sale on equitable grounds, "based on the fact Miebach was not a bona fide purchaser, the gross inadequacy of the price paid, and the irregularities surrounding the sale." *Miebach,* at 175.

██ All the factors relied on to set aside the sale in *Miebach* were existent in the present case. First, neither Flynn nor Parmerter is a bona fide purchaser.

> "A bona fide purchaser for value is one who without notice of another's claim of right to, or equity in, the property prior to his acquisition of title, has paid the vendor a valuable consideration." *Glaser v. Holdorf,* 56 Wn.2d 204, 209, 352 P.2d 212 (1960). The notice "need not be actual, nor amount to full knowledge . . ." *Daly v. Rizzutto,* 59 Wash. 62, 65, 109 P. 276 (1910). *See Glaser v. Holdorf, supra* at 209; *Paganelli v. Swendsen,* 50

Wn.2d 304, 308–09, 311 P.2d 676 (1957); 77 Am. Jur. 2d *Vendor and Purchaser* §§ 656–57 (1975).

"It is a well–settled rule that where a purchaser has knowledge or information of facts which are sufficient to put an ordinarily prudent man upon inquiry, and the inquiry, if followed with reasonable diligence, would lead to the discovery of defects in the title or of equitable rights of others affecting the property in question, the purchaser will be held chargeable with knowledge thereof and will not be heard to say that he did not actually know of them. In other words, knowledge of facts sufficient to excite inquiry is constructive notice of all that the inquiry would have disclosed."

(Citation omitted.) *Peterson v. Weist,* 48 Wash. 339, 341, 93 P. 519 (1908). *See* 2 J. Pomeroy, *Equity* § 605 (5th ed. 1941).

*Miebach,* at 175–76.

In the present case, as in *Miebach,* both Flynn and Parmerter were experienced investors. They knew that they were purchasing an interest sold to satisfy a judgment. They knew that the purchase price they paid was only a small fraction of the value of the property. And, they knew that third parties claimed ownership or rights in the property. Therefore, neither Flynn nor Parmerter is a bona fide purchaser.

Without the intervening rights of a bona fide purchaser, "[t]here is no question but that equity has a right to step in and prevent the enforcement of a legal right whenever such an enforcement would be inequitable." *Malo v. Anderson,* 62 Wn.2d 813, 815, 384 P.2d 867 (1963) (quoting *Thisius v. Sealander,* 26 Wn.2d 810, 818, 175 P.2d 619 (1946)).

*Miebach,* at 177.

In setting aside the sheriff's sale in *Miebach,* this court relied heavily upon the second criterion, the fact that the purchase price was greatly inadequate.

Generally, "mere inadequacy of price, unless so gross as to shock the conscience, is not enough to set aside a judicial sale . . ." However, "when there is a great inadequacy, slight circumstances indicating unfairness will be sufficient to justify a decree setting the sale aside" on

equitable grounds. *Roger v. Whitham,* 56 Wash. 190, 193, 105 P. 628 (1909). *See Lovejoy v. Americus,* 111 Wash. 571, 191 P. 790 (1920); *Triplett v. Bergman,* 82 Wash. 639, 642, 144 P. 899 (1914); *Miller v. Winslow,* 70 Wash. 401, 406, 126 P. 906 (1912); Annot., *Inadequacy of Price as Basis for Setting Aside Execution or Sheriff's Sale— Modern Cases,* 5 A.L.R.4th 794 (1981).

*Miebach,* at 177–78. In *Miebach,* the Colasurdo home was sold for $1,340.02, although its fair market value was $106,000. This court found such a discrepancy sufficient to meet the requirement that the purchase price of a challenged sale be grossly inadequate. In the present case Mr. Grubbe's interest in the property was sold for $14,125.85 when the total value of the property was at least $290,000. Clearly the purchase price paid at the sheriff's sale was grossly inadequate.

Finally, the "circumstances indicating unfairness" that the *Miebach* court relied upon was the fact that the judgment creditor had not used due diligence to collect the judgment out of the personal property of the debtor. Before a writ of execution may issue, RCW 6.17.100 (formerly RCW 6.04.035 (Laws of 1981, ch. 329, § 4)) requires the judgment creditor to file an affidavit stating that the judgment creditor has exercised due diligence to discover whether the debtor has nonexempt personal property sufficient to satisfy the judgment plus interest, and believes that the debtor does not own sufficient nonexempt personal property to satisfy the debt. "[D]ue diligence" is defined by RCW 6.17.100(3):

(3) The term "due diligence," as used in subsection (4) of this section, includes but is not limited to the creditor or the creditor's representative personally visiting the premises, contacting the occupants and inquiring about their relationship to the judgment debtor, contacting immediate neighbors of the premises, and searching the records of the auditor of the county in which the property is located to determine if a declaration of homestead or nonabandonment has been recorded by the judgment debtor.

The *Miebach* opinion relies upon former RCW 6.04.035 as requiring that due diligence be exercised in attempting to locate personal property, not merely that an affidavit be filed to that effect. Clearly this interpretation now applies to RCW 6.17.100, which incorporates all of the substantive language of former RCW 6.04.035. In *Miebach,* we found that "there was no true effort to satisfy the default judgment from personal property or even to discover what personal property might be available." *Miebach,* at 178. The same is true in the present case. Although Flynn filed the affidavit, no evidence was submitted to substantiate a claim that he actually made any attempt to discover personal property. Indeed, beyond searching for personal property, Flynn was required to search also for Grubbe's *separate* property before levy and execution against community property to satisfy his separate debt. There was no evidence or allegation that Flynn made any attempt to discover separate property of Mr. Grubbe before executing against the Grubbes' community interest in the Casa del Rey Apartments.

The facts of this case closely parallel those of the *Miebach* case. In both cases, the property was purchased for a small fraction of its value by persons experienced in business and in the purchase of property from sheriff's sales. In both cases neither the buyers at the sheriff's sale nor their successors in interest were bona fide purchasers. And, in both cases, the real property was subjected to sheriff's sale without a reasonable attempt to satisfy the judgment from personal property. The facts of the present case are even more compelling since the creditor was also required to search for the debtor's separate property and failed to do so.

This court has expressed disapproval of the practices of certain speculators who acquire rights to uncollected judgments for the sole purpose of executing against real property whose value far exceeds the amount of the judgment. RCW 6.17.100 requires a search for personal property before such an execution may be instituted; we believe that

statute requires an actual good faith search, not merely a letter stating that such a search has been conducted. Therefore, we hold that any sale resulting from execution against real property will be invalid, unless a creditor can show: (1) the creditor has searched for personal property which might be taken to satisfy a debt and, (2) where the debt is a separate debt of one spouse, the creditor has searched for separate property of that spouse before executing against community real property. Because no evidence of a good faith search was presented in this case, we find that the sheriff's sale of the Grubbe interest in the Casa del Rey Apartments was invalid.

Affirmed.

PEARSON, C.J., UTTER, BRACHTENBACH, DOLLIVER, and DORE, JJ., and BEVER, NOE, and REVELLE, JJ. Pro Tem., concur.