No. 91,878

In the Matter of BRENDA M. JORDAN, *Respondent*.
(91 P.3d 1168)

Opinion filed June 25, 2004.

*Alexander M. Walczak,* deputy disciplinary administrator, argued the cause and was on the formal complaint for petitioner.

*John J. Ambrosio,* of Topeka, argued the cause for respondent, and *Brenda M. Jordan,* respondent, argued the cause pro se.

*Per Curiam:* This is an original uncontested proceeding in discipline filed by the office of the Disciplinary Administrator against respondent, Brenda M. Jordan, Kansas attorney registration No. 16585, whose last registration address with the Clerk of the Appellate courts of Kansas is Manhattan, Kansas. The respondent was admitted to the practice of law in the state of Kansas in September 1994.

The alleged misconduct arises from two complaints, DA8730 and DA8879. Both complaints regard possible misconduct stemming from respondent's actions while serving in the Riley County Attorney's office in separate prosecutions of Eric Moore and Kenton Dean.

The formal complaint filed by the Disciplinary Administrator's office alleged that respondent violated KRPC 3.3(a) (2003 Kan. Ct. R. Annot. 424) (candor toward tribunal); KRPC 3.4(a) and (d) (2003 Kan. Ct. R. Annot. 429) (fairness to opposing party); KRPC 3.8(d) and (e) (2003 Kan. Ct. R. Annot. 439) (duties of a prosecutor); and 8.4(a) and (d) (2003 Kan. Ct. R. Annot. 464) (misconduct). A panel of the Kansas Board for Discipline of Attorneys conducted a formal hearing on January 22, 2004, and later prepared a report containing its findings of fact, conclusions of law, and recommendations for discipline. Respondent filed no exceptions to the hearing panel's report. The underlying facts found by the panel concerning these violations are summarized as follows:

## FINDINGS OF FACT

*Eric Moore Case*

The respondent was assigned to prosecute a case entitled *State v. Eric Moore*. Moore was charged with robbery and was represented by Jeff Elder. In addition to Moore, two other individuals were also charged with having participated in the robbery, one of whom was Sloam Johnson.

Following Johnson's preliminary hearing, the Riley County Attorney's office dismissed the charges against Johnson. The prosecutors intended to file the robbery charge against Johnson again following the trial of Moore.

Prior to Moore's trial, the respondent knew that Johnson was a suspect in a forgery case in Pottawatomie County, Kansas. The respondent also knew that Johnson was scheduled to testify on behalf of Moore at the trial.

Moore's trial commenced on June 5, 2002. After the trial began, the respondent became aware that the law enforcement officers were planning on arresting Johnson if he appeared at the courthouse, either on a warrant or for probable cause, related to the Pottawatomie County forgery case.

The respondent failed to inform the court or Elder of Johnson's impending arrest.

The respondent had conversations with law enforcement officers from Riley County and Pottawatomie County regarding Johnson. The respondent told Officer Deaun Fronce that she wanted Johnson arrested pursuant to a warrant prior to giving testimony in Moore's trial to discredit his testimony and for "psychological reasons." The respondent also told Officer Fronce that she would prefer to have Johnson testify for the defense wearing jail clothing.

The respondent told Officer Fronce and Officer Ryan Runyan to inform Johnson during his arrest that the Riley County robbery charge that had been dismissed would be refiled against him and he would be also be arrested on that charge.

During the lunch break of the second day of the trial, the respondent sent an electronic mail message to Barry Wilkerson, Pottawatomie County Attorney, regarding Johnson. The message provided:

"You have been brought an affidavit for a warrant for forgery on this guy. You might want to tell the judge he is from out of state, and suspected of multiple robberies, but a slick willy. I anticipate him coming into my trial and testifying for Eric Moore as they were both named as accomplices. Any chance justice could be swift in the review of the warrant request? (Pott. County officers have told RCPD to arrest on PC but thought you might want information for bond)"

Later on June 6, 2002, the Pottawatomie County District Court issued a warrant for the arrest of Johnson for one count of forgery.

On June 7, 2002, while outside the courtroom, waiting to testify in behalf of Moore, law enforcement officers from Pottawatomie County arrested Johnson. By arresting Johnson in Riley County, officers from Pottawatomie County deviated from the standard practice.

After learning that Johnson had been arrested, the court held proceedings outside the presence of the jury. During that discussion, the respondent made the following statements:

"I think Mr. Elder ought to check his information a little further before he makes some allegations.

"The warrant that Mr. Johnson was arrested on this morning was for Pottawatomie County. It had nothing to do with the Riley County Attorney's office. . . .

. . . .

"I would advise the Court there was a communication with Mr. Wilkerson on my behalf simply asking what information if any I might have about this person that he could advise his judge for bond information. . . .

. . . .

"I didn't have any knowledge of the fact that there was any investigation going on in Pott County; in fact I didn't know until yesterday afternoon, when the detective showed up here — other detective on that case showed up here with the Pott County sheriff's deputy saying, 'We've been advised to arrest him on PC.' "

After a recess, Elder made a motion for a mistrial. The court conducted a hearing on the motion. During the hearing, the respondent told the court:

"I would agree, Your Honor. As I've stated previously, I think I've told Mr. Elder this, I acknowledge my mistake. When I talked to Officer Fronce yesterday I related to her if he's arrested and transported, he's got to be brought back. I was operating under the understanding that — belief at that point that it would be yesterday, and I knew I had enough witnesses left he would not be testifying yesterday.

"I made an error obviously in not telling you or telling Mr. Elder, and secondly, in not clarifying to Officer Fronce that I'm talking about today he's not going to be a witness because of how many witnesses I had left. We got busy in trial, never even thought about it. Started this morning and did not even think to tell them, 'Don't do this, this morning.' "

At the conclusion of the hearing on the defendant's motion for mistrial, the court sustained the motion. The Riley County Attorney's office did not seek to retry Moore. Thereafter, the Riley County Attorney's office filed a motion to dismiss the robbery case pending against Moore without prejudice. The Riley County Attorney's office did not refile the robbery case against Johnson.

Later, the Pottawatomie County forgery case filed against Johnson was also dismissed.

*Kenton Dean Case*

On May 8, 2002, the Riley County Attorney's office charged Kenton Dean with two counts of aggravated criminal sodomy and two counts of aggravated criminal restraint. The events which led to the charges occurred on January 6, 2002. The victims of the crimes were C.Y. and E.S. The respondent was assigned to prosecute the case.

On the day after the crimes occurred, C.Y. and E.S. submitted to a rape kit examination. During the examination, blood samples of C.Y. and E.S. were taken. The blood samples were analyzed by Larry Mann, a chemist with the Kansas Bureau of Investigation. Mann determined that, at the time of the examination, C.Y. and E.S. had cocaine in their systems.

C.Y. and E.S. told the respondent that, prior to the crimes, they had not used cocaine. Because C.Y. and E.S. denied using cocaine prior to the crimes, the prosecution's theory was that, unbeknownst to C.Y. and E.S., Dean put cocaine in their alcoholic drinks and then sodomized them.

Prior to the preliminary hearing, C.Y. and E.S. told the respondent that approximately 1 month after the crimes, they had used cocaine for the first time. It appears that the respondent did not inform C.Y. and E.S. that they had cocaine in their systems at the time of the examination. The respondent discussed with her fellow

assistant county attorneys and with William Kennedy, Riley County Attorney, whether she needed to disclose C.Y.'s and E.S.'s cocaine usage after the crimes to counsel for Dean. Kennedy and the assistant county attorneys agreed that the evidence was not exculpatory and she was not obligated to disclose the information.

During the preliminary hearing, counsel for Dean asked one of the victims whether she had used "street drugs" prior to the offense. The respondent objected and argued that evidence of the victim's drug use was not relevant. The court agreed and the objection was sustained.

Following the preliminary hearing, the respondent amended the complaint and charged Dean with one count of aggravated criminal sodomy and two counts of criminal restraint. The complaint alleged that Dean sodomized E.S. while she was "unconscious or physically powerless and/or incapable of giving consent due to the effect of an alcoholic, narcotic, drug or other substance, which condition was known or reasonably apparent to the said Defendant."

Because Wilkerson had a similar case pending against Dean in Pottawatomie County, Wilkerson agreed to assist the respondent in trying the case. In preparing for trial, Wilkerson contacted Mann. Mann told Wilkerson that he would be able to calculate E.S.'s blood alcohol concentration at the time the crimes occurred, based upon her blood alcohol concentration at the time of the examination using regression analysis. Wilkerson informed the respondent that Mann would be able to make such calculations. Neither Wilkerson nor the respondent informed counsel for Dean that Mann would be testifying to the calculation during trial.

Shortly before trial, counsel for Dean objected to Wilkerson's participation in the trial. The court refused to allow Wilkerson to assist the respondent in the trial.

During the respondent's opening statement, the respondent referred to Mann's expected testimony regarding the victim's blood alcohol concentration at the time of the crime. Counsel for Dean objected because the respondent was to have provided all scientific tests, reports, or experiments and had not provided any information about such regression analysis. The court sustained the objection,

admonished the jury to disregard the comments, and prohibited the respondent from introducing such evidence.

On a break during the trial, counsel for Dean warned the respondent that he would file an ethical complaint if she called a particular witness to testify. Counsel for Dean told the respondent that he believed that the witness would testify falsely. After being warned that counsel for Dean would file an ethical complaint, the respondent went through everything in her file to make sure that counsel for Dean had all the information that he was entitled to have. The respondent recalled that she had not disclosed C.Y.'s and E.S.'s cocaine usage that occurred approximately 1 month after the crimes. Although she had previously concluded that that information did not amount to exculpatory evidence, because counsel for Dean was threatening to file an ethical complaint, the respondent decided to disclose that information to counsel for Dean.

Prior to the start of the next day of trial, the respondent informed counsel for Dean that approximately 1 month after the crimes, the victim used cocaine. After learning that the victim had used cocaine approximately 1 month after the crimes, counsel for Dean moved for a mistrial. The court agreed that evidence that the victim used cocaine 1 month after the crimes may be exculpatory and because the defense did not know about the victim's cocaine use, the defense was not permitted to explore or develop any leads or strategy concerning the credibility of the victim. However, the court denied the motion for mistrial. The court issued a second curative instruction to the jury, admonishing the jury to ignore all references to cocaine. The court prohibited the respondent from mentioning cocaine during the trial.

Later, the court directed the respondent to have the victim refrain from testifying that she felt "numb." Additionally, the court prohibited the respondent from asking the victim to compare her level of intoxication on the night of the crimes with other occasions when she had been intoxicated. Thereafter, the respondent asked the victim the following series of questions:

"Q. How were you feeling?
"A. I felt numb and just sick to my stomach. My head was spinning.
. . . .

"Q. Have you drank similar amounts of alcohol before?

"A. Yes.

"Q. Can you compare how you felt this morning to other times after you had drank someone else's alcohol?

"A. It wasn't the same.

"Q. In what respect?

"A. "I had never felt like I had to throw up, but I couldn't. I've only thrown up once since I have drank. My head was spinning. I felt numb."

Because the court had previously issued two curative instructions and because of this series of questions, counsel for Dean again moved for a mistrial. In response to the motion for mistrial, the respondent argued that she did not understand that the court ordered her to refrain from asking such questions. The court granted Dean's motion for mistrial, stating:

"[T]he Court finds that this falls under [K.S.A.] 22-3423(1)(c), prejudicial conduct, in or outside the courtroom, making it impossible to proceed with the trial without an injustice to either the defendant or the prosecution. In this particular instance to the defendant. I'm going to grant the motion for mistrial on that basis. The question then is the effect. Defense urges prosecutorial misconduct with jeopardy having attached, and the effect being that the matter is dismissed with prejudice. The law on that point is, as is with many things, not altogether uncomplicated . . . . It is my finding that the conduct that was here from the State which has caused the Court to grant the mistrial, although intentional I can not find and I have nothing that would indicate this, and I recognize that this is a subjective judgment, I don't think that it was done to provoke a motion for mistrial. I think it does fall into the category of (probably to obtain a conviction) as the court notes parenthetically there. That is the law as I read it as stated by our Supreme Court, those are the findings that I think that I have to make."

Thereafter, the Riley County Attorney's office dismissed the case against Dean.

## PANEL'S CONCLUSIONS OF LAW

Based upon the above uncontested facts, the panel concluded, as a matter of law, that the respondent violated KRPC 3.3, KRPC 3.4, KRPC 3.8, and KRPC 8.4, as detailed below.

*KRPC 3.3*

Attorneys must be honest and truthful with the court. "A lawyer shall not knowingly make a false statement of material fact or law to a tribunal." KRPC 3.3(a)(1). When the respondent told the court

that the warrant issued from Pottawatomie County "had nothing to do with the Riley County Attorney's office," the respondent made a false statement of material fact to the court. As such, the hearing panel concludes that the respondent violated KRPC 3.3(a)(1).

*KRPC 3.4*

KRPC 3.4 provides, in pertinent part, as follows:

"A lawyer shall not:

. . . .

(d)  in pretrial procedure, make a frivolous discovery request or fail to make reasonably diligent effort to comply with a legally proper discovery request by an opposing party."

The respondent violated KRPC 3.4(d) when she failed to inform counsel for Dean that she expected Mann to testify regarding a calculation of the victim's blood alcohol concentration at the time of the crime. Accordingly, the hearing panel concludes that the respondent violated KRPC 3.4(d).

*KRPC 3.8*

Prosecutors have special responsibilities which can be found at KRPC 3.8. Specifically, prosecutors shall:

"make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense, and, in connection with sentencing, disclose to the defense and to the tribunal all unprivileged mitigating information known to the prosecutor, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal."

In *State v. Dean*, the respondent should have disclosed that the victim had used cocaine approximately 1 month following the crimes. Because she failed to do so, the hearing panel concludes that the respondent violated KRPC 3.8(d).

*KRPC 8.4*

"It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice." KRPC 8.4(d). In this case, as a result of the respondent's misconduct, two jury trials ended in mistrials and the cases were ultimately dis-

missed. Clearly, the respondent's misconduct resulted in prejudice to the administration of criminal justice in Riley County, Kansas. The hearing panel therefore concludes that the respondent violated KRPC 8.4(d).

## PANEL'S RECOMMENDATION

In making its recommendation for discipline, the panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (1991). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

On the subjects of Duty Violated and Mental State, the respondent recklessly violated her duty to the legal system to refrain from interfering with the administration of justice. On the subject of Injury, as a result of the respondent's misconduct, the court declared a mistrial in two cases. Later, the respondent dismissed the criminal cases regarding Moore and Dean. Additionally, the respondent opted not to refile the robbery case against Johnson.

On the subject of Aggravating Factors, several were present. In regard to Pattern of Misconduct and Multiple Offenses, included in this case are two complaints. The complaints involve similar misconduct. Accordingly, the respondent engaged in a pattern of misconduct. The respondent violated KRPC 3.3, KRPC 3.4, KRPC 3.8, and KRPC 8.4. As such, the respondent committed multiple offenses. Regarding the aggravating factor of Vulnerability of Victims, the victims of the respondent's misconduct included the individuals who were the victims of the underlying criminal cases. They were extremely vulnerable to the respondent's misconduct. Regarding the aggravating factor of Substantial Experience in the Practice of Law, the Kansas Supreme Court admitted the respondent to practice of law in 1994. At the time the respondent engaged in misconduct, the respondent had been practicing law for a period of 8 years. Accordingly, the hearing panel concludes that the respondent had substantial experience in the practice of law at the time she engaged in the misconduct.

On the subject of Mitigating Circumstances, several were present. For the mitigating factor of Absence of a Prior Disciplinary Record, the respondent has not previously been disciplined. Regarding the mitigating factor of Timely Good Faith Effort to Make Restitution or to Rectify Consequences of Misconduct, in an attempt to rectify the consequences of her misconduct on the criminal defendants, after the mistrials were declared, the respondent dismissed the criminal actions pending against Moore and Dean. Additionally, the respondent did not refile the robbery charge against Johnson. Regarding the mitigating factor of the Present and Past Attitude of the Attorney as Shown by the Respondent's Cooperation During the Hearing and the respondent's Acknowledgment of the Transgressions, the respondent fully cooperated in the disciplinary process as exhibited by her acknowledgment of the misconduct. Regarding the mitigating factor of Previous Good Character and Reputation in the Community Including any Letters from Clients, Friends, and Lawyers in Support of the Character and General Reputation of the Attorney, the respondent is an active and productive member of the bar in Manhattan, Kansas. She enjoys the respect of her peers and generally possesses a good character and reputation as evidenced by several letters received by the hearing panel. Regarding the mitigating factor of Remorse, at the hearing on the formal complaint, the respondent expressed genuine remorse.

In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards: "Reprimand is generally appropriate when a lawyer in an official or governmental position negligently fails to follow proper procedures or rules, and causes injury or potential injury to a party or to the integrity of the legal process." Standard 5.23.

"Reprimand is generally appropriate when a lawyer is negligent either in determining whether statements or documents are false or in taking remedial action when material information is being withheld, and cause injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding." Standard 6.13.

"Reprimand is generally appropriate when a lawyer negligently fails to comply with a court order or rule, and causes injury or potential injury to a client or other

party, or causes interference or potential interference with a legal proceeding." Standard 6.23.

Based upon the findings of fact, conclusions of law, and the Standards listed above, the panel unanimously recommended that the respondent be censured by the Kansas Supreme Court, but that the censure not be published in the Kansas Reports. Additionally, the panel concluded that costs should be assessed against the respondent in an amount to be certified by the office of the Disciplinary Administrator.

## DISCUSSION

To warrant a finding of misconduct, the charges must be established by clear and convincing evidence. Supreme Court Rule 211(f) (2003 Kan. Ct. R. Annot. 265); *In re Rathburn*, 275 Kan. 920, 929, 69 P.3d 537 (2003). A hearing panel's report is deemed admitted under Rule 212 (c) and (d) (2003 Kan. Ct. R. Annot. 271) when a respondent fails to file exceptions. *In re Boaten*, 276 Kan. 656, 663, 78 P.3d 458 (2003). In the case at hand, since respondent filed no exceptions to the panel's report, we conclude that the panel's findings of fact are supported by clear and convincing evidence and that the facts established support the panel's conclusions of law. We therefore adopt the panel's findings and conclusions, but not its recommended discipline.

The panel recommended unpublished censure, and the Deputy Disciplinary Administrator recommended a published censure. We conclude that because some of respondent's misconduct was intentional, a discipline greater than unpublished censure is warranted.

IT IS THEREFORE ORDERED that Brenda M. Jordan be and is hereby disciplined by censure in accordance with Supreme Court Rule 203(a)(3) (2003 Kan. Ct. R. Annot. 226) for her violations of the Kansas Rules of Professional Conduct.

IT IS FURTHER ORDERED that this opinion be published in the official Kansas Reports and that the costs herein be assessed to the respondent.