*This opinion is subject to revision before final publication in the Pacific Reporter*

**2016 UT 26**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

In the Matter of the Discipline of TYLER JAMES LARSEN

TYLER JAMES LARSEN,
*Appellant and Cross-Appellee,*

*v.*

UTAH STATE BAR,
*Appellee and Cross-Appellant.*

No. 20140535
Filed June 16, 2016

On Direct Appeal

Third District, Salt Lake
The Honorable Andrew H. Stone
No. 130901067

Attorneys:

Tyler James Larsen, pro se, Coalville, appellant and
cross-appellee

Todd Wahlquist, Salt Lake City, for appellee and cross-appellant

ASSOCIATE CHIEF JUSTICE LEE authored the opinion of the Court, in
which CHIEF JUSTICE DURRANT, JUSTICE DURHAM, and
JUSTICE HIMONAS joined.

JUSTICE JOHN A. PEARCE became a member of the Court on
December 17, 2015, after oral argument in this matter, and
accordingly did not participate.

ASSOCIATE CHIEF JUSTICE LEE, opinion of the Court:

¶1 Tyler James Larsen was suspended from the practice of law
for seven months for violating two rules of professional conduct. We
reverse in part and affirm in part.

I

¶2 Tyler James Larsen was a prosecutor with the Davis County Attorney's Office from 2007 to 2010. He was charged with two sets of violations of the Utah Rules of Professional Conduct in 2012. One charge alleged a misstatement of fact in violation of rule 3.3. The other alleged a failure of a prosecutor to make a timely disclosure of exculpatory evidence to the defense under rule 3.8. In the proceedings reviewed on this appeal, the district court found that Larsen had violated both rules. And it imposed a sanction of suspension for seven months—thirty days for the rule 3.3 violation and six months for the rule 3.8 violation.

¶3 The rule 3.3 charge arose out of a 2009 proceeding involving a woman on probation for a DUI conviction. At a hearing on that case defense counsel asserted that his client had been charged probation fines that were excessive. The trial judge then set a hearing for the next month to look into the matter further.

¶4 Craig Webb, an investigator with the Davis County Attorney's Office, investigated the matter. Webb collected receipts from the probation agent and recorded data in a spreadsheet. Webb's spreadsheet showed that the probationer had paid $3,797. At the hearing Larsen requested a sidebar with Judge Allphin, where he indicated that he had a spreadsheet showing that the probationer had paid $6,000. When questioned further, Larsen also stated that his boss, the Davis County Attorney, did not want that information to be disclosed.

¶5 Larsen was subsequently charged with misstating the facts to the court in connection with the above proceedings. In the disciplinary proceedings below, the district court found that Larsen had misstated the facts in claiming he had a spreadsheet showing that the probationer had paid $6,000 to the probation agent and in stating that the Davis County Attorney preferred not to have that information disclosed. Specifically, the court concluded that there was no spreadsheet reflecting a payment of $6,000 at the time of the underlying hearing. In so doing, however, the court found that the OPC had not established "intentional misrepresentation." Instead it concluded that "Larsen's statement was a misstatement that a reasonably diligent inquiry would have avoided." *Findings of Fact and Conclusions of Law* at 4.

¶6 This point was clarified in an exchange between Larsen and the court toward the end of the hearing. That exchange was as follows:

> **Mr. Larsen**: Can I just ask one clarification? So, on the first [count], you did not find intent?
>
> **The Court**: I did not find intentional misrepresentation; I found reckless misrepresentation.

*Original Transcript (Partial) of Trial*, May 21, 2014 at 9.

¶7 The district court made further findings in an Order of Sanction it entered against Larsen. In the Order the district court found that Larsen had made a separate untrue statement to the trial judge in the underlying hearing in 2009. And although the court acknowledged that OPC had not asserted a separate charge on the basis of that statement, the district court found that "it [was] probative" of Larsen's state of mind—that his "actions were knowing *or reckless* at the time" of the underlying hearing. *Findings of Fact and Conclusions of Law* at 4.

¶8 On these grounds the district court found that Larsen had violated rule 3.3. It also imposed a thirty-day suspension based on that violation.

¶9 The rule 3.8 charge arose out of a 2010 felony robbery case. The defendant in that case was accused of robbing two stores, Kim's Fashions and Baskin-Robbins, in 2006. A key issue at trial concerned identification of the perpetrator. No physical evidence connected the defendant to the robberies, but two eyewitnesses from each robbery were called to identify the defendant as the robber.

¶10 The rule 3.8 charge centered around Larsen's interactions with the eyewitnesses. About ten days before trial Larsen and a police officer met with the Kim's Fashions witnesses and then the Baskin-Robbins witnesses to discuss the upcoming trial. At the end of both meetings Larsen showed the witnesses a single photograph of the defendant and asked the witnesses if they would be able to identify him as the robber at trial. No other photographs were shown. All of the witnesses indicated that they would be able to make the identification.

¶11 About a week before the trial, Larsen met with Mark Arrington, the defendant's attorney. Larsen told Arrington that the prosecution's "witnesses had ID'd [the defendant]." *Original Transcript (Partial) of Trial*, May 20, 2014 at 39. Arrington did not ask

Larsen any more questions about the identification. And Larsen did not disclose that he had shown a photograph of the defendant to the witnesses.

¶12 At trial the husband and wife owners of Kim's Fashions were the first witnesses. The husband testified on cross-examination that he had not seen a photograph of the defendant. Larsen did not correct this false testimony on redirect.

¶13 The wife was then called to the witness stand. On cross-examination, she admitted that Larsen had shown her and her husband a single photograph of the defendant about ten days before trial. Arrington then moved for a mistrial.

¶14 The record is a bit unclear as to the precise sequence of events following the motion for mistrial. At oral argument before this court, Larsen said that after Arrington moved for a mistrial, the judge and attorneys had a sidebar conversation in which the judge inquired into the possibility of salvaging the Baskin-Robbins robbery charges if those witnesses had not been shown the photograph. Larsen said he did not fully understand what the judge was talking about; so he said that at that time he did not disclose that he had also shown the Baskin-Robbins witnesses the photo.

¶15 During the recess that followed the sidebar, however, Larsen claims that he told Arrington that he had shown the photo to the Baskin-Robbins witnesses. At that point, Arrington notified the judge, who then declared a mistrial.[1]

¶16 OPC advanced a somewhat different sequence at oral argument. It said that Larsen allowed the Baskin-Robbins trial to go forward even though he knew the witnesses were tainted. That is a

_____

[1] The precise chronology is a bit unclear on the record, however. At his disciplinary trial Larsen stated that the first Baskin-Robbins witness had begun to testify about what was occurring in a surveillance video, but the video machine wouldn't function properly. The court then took a recess. It is unclear whether this is the break in which Larsen claimed he told defense counsel about the problem with the two Baskin-Robbins witnesses. It is also unclear whether the witness went back on the stand. After the recess the second Baskin-Robbins witness took the stand and Larsen asked her questions that elicited a statement that Larsen had shown her a photo of the defendant before trial. *See also infra* ¶ 33 n.3.

plausible inference to be drawn from the record. But there is nothing in the record that clearly indicates the Baskin-Robbins part of the trial went forward in any meaningful sense before Larsen's admission. At oral argument we asked OPC whether Larsen told Arrington that he had shown the picture to the Baskin-Robbins witnesses before or after the sidebar meeting with the judge. And OPC acknowledged that the trial record is not clear on the precise sequence of the relevant events.

¶17 In the disciplinary proceedings below, the district court found that "[w]hen Judge Allphin indicated a willingness to proceed on the second charge if the victims had not seen the photographs, Mr. Larsen did not volunteer at the time that he had shown the photos to the other victims." *Findings of Fact and Conclusions of Law* at 6. And on that basis the court concluded that "Mr. Larsen intentionally concealed the fact of the photo show from the defense." That finding led to the imposition of a six-month suspension against Larsen.

II

¶18 Larsen challenges the suspensions imposed against him under both rules 3.3 and 3.8. He alleges error in the legal conclusions and findings supporting both of the rules violations and asks us to reverse. OPC defends the district court's legal and factual analysis. It also cross-appeals, claiming error in the length of the sanction and the imposition of separate sanctions for each rule violation, and asking us to require a single, overarching sanction instead of separate ones.

¶19 We review the district court's decision under standards of review that account for our constitutional responsibility to "govern the practice of law, including admission to practice law and the conduct and discipline of persons admitted to practice law." UTAH CONST. art. VIII, § 4. Thus, we will "not overturn a district court's findings of fact unless they are 'arbitrary, capricious, or plainly in error.'" *Utah State Bar v. Lundgren (In re Discipline of Lundgren),* 2015 UT 58, ¶ 9, 355 P.3d 984 (citation omitted). Yet "'in light of our constitutional mandate and the unique nature of disciplinary actions,' we review district court findings in attorney discipline matters with less deference" than we would afford in other cases. *Id.* (citation omitted). We "retain 'the right to draw different inferences from the facts' in order to 'make an independent determination' of the correctness of the discipline the district court imposed." *Id.* (citation omitted).

¶20 Applying these standards, we reverse in part (as to the rule 3.3 charge) and affirm in part (as to the rule 3.8 charge) on Larsen's appeal. As to OPC's cross-appeal, we affirm the district court; we reject the notion that district courts are required to impose a single, overarching sanction on multiple ethics charges.

A

¶21 Rule 3.3 of the Utah Rules of Professional Conduct governs candor to our tribunals. It provides that "[a] lawyer shall not knowingly: (a)(1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." UTAH R. PROF'L CONDUCT 3.3(a)(1).

¶22 Larsen challenges the district court's determination that he violated this rule. His principal argument concerns the relevant state of mind. Larsen views rule 3.3(a)(1) as requiring a finding of a knowing false statement and contends that the district court did not find that his misstatement was a knowing one.

¶23 OPC asks us to interpret the rule to encompass reckless misstatements made without any plausible basis in fact. Citing cases in other jurisdictions, OPC insists that "under certain circumstances, an attorney's conduct can be so careless or reckless that it must be deemed to be knowing." *People v. Rader*, 822 P.2d 950, 953 (Colo. 1992).

¶24 We reverse. Rule 3.3(a)(1) plainly requires that any misstatement be made "knowingly." UTAH R. PROF'L CONDUCT 3.3(a)(1). And the district court never found actual knowledge. In the findings of fact in the sanction order, the district court found that OPC had not established "intentional misrepresentation." *Findings of Fact and Conclusions of Law* at 4. Instead it concluded that "Larsen's statement was a misstatement that a reasonably diligent inquiry would have avoided." *Id.* The court's conclusions of law, moreover, state that Larsen's misstatement was "knowing *or* reckless." *Id.* (emphasis added). And when pressed by Larsen in open court, the district court indicated that he had found only "reckless misrepresentation." *Original Transcript (Partial) of Trial*, May 21, 2014 at 9.

¶25 The district court accordingly did not find that Larsen's misstatement was knowing. And rule 3.3(a)(1) requires proof that a misstatement was made knowingly. So it was error for the district

court to conclude that there was a violation of rule 3.3 in the absence of a finding of a knowing misstatement.

¶26 Alternatively, the district court erred in implicitly treating a reckless misstatement as the legal equivalent of a knowing one. It did so in concluding that Larsen's misstatement was "knowing *or* reckless," and in basing its determination of a violation of rule 3.3 on the finding that Larsen could have avoided making a misstatement if he had undertaken a "reasonably diligent inquiry." This too was error. Our rules do not treat *knowledge* and *recklessness* as equivalents. They state that "'[k]nowingly,' 'known' or 'knows' denotes *actual knowledge* of the fact in question." UTAH R. PROF'L CONDUCT 1.0(g) (emphasis added).

¶27 We reverse on the basis of this definition. *Actual knowledge* is distinct from *recklessness*. And our rules require actual knowledge to sustain a charge under rule 3.3. So we reverse on the ground that the district court conflated knowledge and recklessness and did not find that Larsen made a knowing misstatement.[2]

¶28 In so holding, we acknowledge a plausible basis for the district court's analysis in Comment 3 in the Advisory Committee Notes to rule 3.3. That comment states that "an assertion purporting to be on the lawyer's own knowledge . . . in a statement in open court, may properly be made only when the lawyer knows the assertion is true or believes it to be true on the basis of a *reasonably diligent inquiry*." (Emphasis added). The comment is correct as a statement of best practices. A lawyer who makes a statement in court can be confident that the statement is "proper[]" "only when the lawyer knows the assertion is true or believes it to be true on the basis of a reasonably diligent inquiry." But the comment is not just a statement of best practices; it is an elaboration of the requirements of rule 3.3. And that rule, as written, does not lend itself to the

_____

[2] To be clear, we do not foreclose the possibility of a determination of a knowing misstatement on the basis of circumstantial evidence. *See* UTAH R. PROF'L CONDUCT 1.0(g) ("A person's knowledge may be inferred from circumstances."). OPC need not present direct evidence of knowledge—e.g., an admission—to sustain a charge of a violation of rule 3.3(a)(1). But the rule requires a finding that the false statement was a knowing one. Constructive knowledge is insufficient.

interpretation that a false statement made without a "reasonably diligent inquiry" is a *knowing* misstatement in violation of the rule.

¶29 In other areas, the law sometimes "charges [a] person with *notice of facts* which a *reasonably diligent inquiry* would have disclosed." *Hottinger v. Jensen*, 684 P.2d 1271, 1274 (Utah 1984) (emphasis added). And that principle at least sometimes treats a false statement made in the absence of a reasonably diligent inquiry as one made with *constructive* knowledge.[3] But that is not the concept of knowledge incorporated in the Utah Rules of Professional Conduct. As noted above, our rules require proof of *actual knowledge*. That concept is distinct from constructive knowledge or recklessness.

¶30 We accordingly repudiate Comment 3 in the Advisory Committee Notes to rule 3.3. We do so to avoid confusion going forward in cases like this one, in which the district court understandably appears to have relied on this comment.

¶31 The Advisory Committee Notes are not law. They are not governing rules voted on and promulgated by this court. They set forth only the advisory committee's views of our rules. And although they may provide helpful guidance, they cannot override the terms of the rules themselves. Because the note in question here does that, we rescind it and direct that it be stricken. We accordingly reverse the conclusion that Larsen violated rule 3.3, while

_____

[3] *See, e.g., Musk v. Burk*, 58 F.2d 77, 79 (7th Cir. 1932) (holding that a person involved in a transaction is "charged with notice of all the facts which a reasonably diligent inquiry would develop"); *Rader v. Star Mill & Elevator Co.*, 258 F. 599, 604 (8th Cir. 1919) (determining that "all [of] the facts which a *reasonably diligent inquiry* would disclose" is "in the eyes of the law *equivalent to a knowledge* of [those facts]" (emphasis added)); *Idaho State Bar v. Dodge (In re Dodge)*, 108 P.3d 362, 367 (Idaho 2005) (concluding that "a person's knowledge may be inferred from circumstances," and thus if an attorney "cannot point to a reasonably diligent inquiry to ascertain the truth of the statement," the attorney violates the rules of professional conduct if he "remain[s] silent, profess[es] no knowledge, or couch[es] the assertion in equivocal terms so the court can assess the assertion's probative value"); *Casa del Rey v. Hart*, 750 P.2d 261, 264 (Wash. 1988) ("It is a well-settled rule that . . . [a person] will be held chargeable with knowledge" if that person could have made an inquiry "with reasonable diligence." (citation omitted)).

acknowledging an apparent basis for that conclusion in our advisory committee's commentary.

B

¶32 Rule 3.8 of the Utah Rules of Professional Conduct prescribes duties specific to the unique role of a prosecutor. It requires a prosecutor in a criminal case to "[m]ake timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense." UTAH R. PROF'L CONDUCT 3.8(d).

¶33 Larsen first challenges the district court's determination that he violated this rule by not disclosing to defense counsel that he had shown a photograph of the defendant to eyewitnesses in the underlying robbery cases (without showing any other photographs). He claims that the evidence showed that he made a timely disclosure by acknowledging that he had shown a photograph to the witnesses *during trial*. Second, Larsen challenges the district court's determination that his violation of rule 3.8 was made knowingly. Finally, Larsen also contests the imposition of the sanction of a six-month suspension for this alleged violation, claiming that it was disproportionate. We affirm.

1

¶34 The threshold question presented is whether Larsen fulfilled his duty under rule 3.8(d). Larsen says he complied with the rule by admitting at trial that he had shown a photograph of the defendant to the eyewitnesses. OPC says Larsen made no disclosure, or at least that it came too late to be timely.

¶35 The precise timing of Larsen's admission is not clear from the record. *See supra* ¶¶ 14–16 & n.1. But we see no way to characterize the admission he made at trial as a "timely disclosure" under rule 3.8(d).

¶36 The timeliness of a prosecutor's disclosure of exculpatory evidence is a matter governed in Utah by our rules of criminal procedure. By rule, a prosecutor must "make all disclosures as soon as practicable following the filing of charges and before the defendant is required to plead." UTAH R. CRIM. P. 16(a)(5)(b). Our rule also implicitly recognizes that some exculpatory material may not be known before the time for a plea; for such material, the prosecutor "has a continuing duty to make disclosure," and an obligation to do so "as soon as practicable." *Id*.

¶37 The requirement of timely disclosure is important. It is aimed at allowing the "defendant to adequately prepare his defense." *Id.* 16(a)(5). And our ethics rule has the same evident focus. Rule 3.8(d) of the Utah Rules of Professional Conduct requires more than just disclosure; it requires "timely disclosure."

¶38 Larsen's admission at trial cannot be viewed as a "timely disclosure." He knew before trial that he had shown the defendant's photograph (and no other photographs) to the eyewitnesses of the two robberies. And he failed to disclose that fact "as soon as practicable" thereafter—in advance of trial, at a time necessary to allow "the defendant to adequately prepare his defense." UTAH R. CRIM. P. 16(a)(5) & (b).

¶39 If the prosecutor's possession of exculpatory evidence is uncovered at trial, a subsequent admission of that fact may be somewhat mitigating at the sanction phase. But the admission is not itself a fulfillment of the rule 3.8(d) duty of disclosure. If that were enough, the rule would be rendered practically toothless, as any savvy prosecutor could avoid an ethics violation by the simple expedient of an after-the-fact admission of a prior failure of disclosure once it is exposed by someone else.

¶40 Larsen cites *State v. Bisner*, 2001 UT 99, 37 P.3d 1073, and *United States v. Bagley*, 473 U.S. 667 (1985), for the proposition that there is no violation of the duty to disclose exculpatory material under *Brady v. Maryland*, 373 U.S. 83 (1963) unless the prosecution "suppresses information that (1) remains unknown to the defense both before and throughout trial and (2) is material and exculpatory, meaning its disclosure would have created a 'reasonable probability' that 'the result of the proceeding would have been different.'" *Bisner*, 2001 UT 99, ¶ 33 (citation omitted). And because Larsen's act of showing photographs to the eyewitnesses became known during trial, Larsen insists that he also fulfilled his duties under rule 3.8(d).

¶41 We see the matter differently. Larsen's argument conflates the *Brady* standard with the prosecutor's ethical duty under rule 3.8(d). But the two standards are distinct. The question under *Brady* is a matter of due process—of whether the prosecution's failure to disclose exculpatory material so undermines our confidence in the verdict that we should order a new trial. If the exculpatory evidence in question is disclosed *during trial*, there may be no prejudice and thus no need for a new trial. *See Bagley*, 473 U.S. at 682 (indicating that the prejudice analysis requires an assessment of whether there is a "reasonable probability" of a different outcome if disclosure had

10

been made). But rule 3.8(d)'s focus is different. It is aimed not only at assuring a fair trial—by articulating a standard for a motion for a new one—but also at establishing an ethical duty that will avoid the problem in the first place. In stating that duty, our rule requires "timely disclosure" by the prosecution. That duty cannot be fulfilled by a prosecutor's mere admission of the existence of exculpatory evidence made *after* a witness first uncovers it.

¶42  We affirm on that basis. The district court found that Larsen failed to make a timely disclosure as to all four witnesses—the two witnesses on the Kim's Fashions count and the two witnesses on the Baskin-Robbins count. We affirm because we conclude that Larsen's admission at trial cannot count as a "timely disclosure" under the rules.

2

¶43  The next question concerns Larsen's state of mind in violating rule 3.8(d). In the district court's view Larsen's failure to make a timely disclosure was knowing—even intentional. It found that Larsen had an "intent to conceal the fact of showing the photos to the victims," *Findings of Fact and Conclusions of Law* at 6, or in other words that he "intentionally concealed the fact of the photo show from the defense." *Id.* The district court thought that the evidence "showed a deceptive intent on the part of Mr. Larsen." *Id.*

¶44  Larsen challenges this finding on appeal. He argues that the second count in the formal complaint "omits any factual allegation that [he] acted intentionally." *Appellant's Brief* 31. He further states that "no one testified that [he] acted intentionally," *id.*, and posits that "[e]ven the defense attorney said that he did not think that [Larsen] acted 'maliciously.'"[4] *Id.*

_____

[4] At oral argument on this appeal, Larsen sought to defend his failure to disclose—and to rebut the finding of a knowing and intentional violation of the rule—by asserting that he was supposed to be second chair at the trial on these two robbery counts, and that his conduct is explained by the fact that he was flustered when the first chair failed to show for trial. But we can find nothing in the record to support that assertion. So we do not consider it on this appeal.

¶45 We affirm. There is ample evidence in the record to support the district court's findings as to Larsen's state of mind in failing to make timely disclosures under rule 3.8(d). State of mind, moreover, is the kind of factual question that the district court is in the best position to assess. We will not reverse a decision on state of mind absent clear error, and we see none here.

3

¶46 That leaves the question of the propriety of the sanction—a six-month suspension—imposed by the district court. By rule, a finding of a *knowing* violation of rule 3.8(d) would "generally" sustain a sanction of suspension if it "causes injury or potential injury to a party, the public, or the legal system, or causes interference or potential interference with a legal proceeding." UTAH CODE OF JUD. ADMIN. art. 14-605(b)(1). And a suspension is "[g]enerally . . . imposed for a specific period of time equal to or greater than six months," but no "more than three years." *Id.* 14-603(c). In "deciding what sanction to impose," our rules also identify "aggravating and mitigating circumstances" that "may be considered." *Id.* 14-607.

¶47 The district court determined that a six-month suspension was appropriate for this count. In so deciding, it first concluded that Larsen's violation of rule 3.8(d) was "knowing" and that "the potential harm to the defendant was significant." *Order of Sanction* at 8-9. We see no basis for quarreling with these determinations. They are amply supported by the record.

¶48 With these premises established, our rules call "generally" for the imposition of the sanction of suspension. But that leaves the question whether this is a "general" case or an unusual one. And it still requires a decision as to the appropriate length of any suspension.

¶49 In evaluating the question whether the "generally" appropriate sanction is proper here, our rules call for an evaluation of aggravating and mitigating circumstances. UTAH CODE OF JUD. ADMIN. art. 14-607. On this point, the district court found both aggravating and mitigating circumstances. It noted, on one hand, that Larsen had no prior record of discipline, lacked a dishonest or selfish motive, and was inexperienced in the practice of law. On the other hand, the court also noted that Larsen faced multiple charges, showed an unwillingness to acknowledge the wrongfulness of his misconduct, and harmed a particularly vulnerable victim.

¶50 Again we see no reason to disagree with this analysis. Ultimately, we think it fair to say that the mitigating and aggravating factors largely cancel each other out in this case. And we accordingly agree with the district court's determination that a six-month suspension is appropriate.

¶51 In so doing we reject Larsen's plea for a reduced sanction. The prosecution's duty of disclosure under rule 3.8(d) is an important one. And the district court found that Larsen's violation of this rule was not only knowing but intentional. That strikes us as a sufficient reason to sustain a suspension and to reject Larsen's request for a lesser sanction such as a public reprimand.

¶52 Yet we also reject OPC's—and amicus Utah Association of Criminal Defense Lawyers'—request for more serious sanctions. OPC has asked for the imposition of a three-year suspension in this case. And amicus seeks an outright disbarment. Both requests are based on the same essential point—that the prosecutor plays an important role in our system of justice, and that a failure to disclose exculpatory evidence can do substantial harm to the administration of justice. We do not disagree with these premises. But we nonetheless affirm the six-month suspension imposed in this case. We do so on three grounds: (1) a suspension from the practice of law, even for six months, is a serious penalty for a practicing lawyer; (2) there are at least some mitigating circumstances in this case; and (3) the precedents involving sanctions against prosecutors under rule 3.8(d) include a few suspensions for six months but none for any greater period, and no disbarments.[5]

_____

[5] We are aware of no Utah cases under rule 3.8(d). But cases in other jurisdictions seem to generally sustain the proportionality of the sanction imposed in this case. *See, e.g., Comm. on Prof'l Ethics and Conduct of the Iowa State Bar Ass'n v. Ramey*, 512 N.W.2d 569, 572 (Iowa 1994) (indefinite suspension, but with possibility of reinstatement after three months); *Disciplinary Counsel v. Wrenn*, 790 N.E.2d 1195, 1198 (Ohio 2003) (six-month suspension); *Disciplinary Counsel v. Jones*, 613 N.E.2d 178, 180 (Ohio 1993) (six-month suspension) *State ex rel. Okla. Bar Ass'n v. Miller*, 309 P.3d 108 (Okla. 2013) (six-month suspension, but for numerous other counts as well). *But see In re Jordan*, 913 So. 2d 775, 784 (La. 2005) (three-month suspension, but deferred due to mitigating factors). We have found cases in which prosecutors have been given a lighter sanction. *See In*

(continued …)

¶53 The cited precedents are by no means binding. But they are helpful in assessing the appropriate sanction under a scheme that yields substantial discretion for the court. And in light of these precedents and the other circumstances identified above, we conclude that a six-month sanction is appropriate for Mr. Larsen's violation of rule 3.8(d).

C

¶54 The American Bar Association's "Standards for Imposing Lawyer Sanctions" expressly "do not account for multiple charges of misconduct." AMERICAN BAR ASSOCIATION, STANDARDS FOR IMPOSING LAWYER SANCTIONS 8 (1992). Instead they provide that "[t]he ultimate sanction imposed should at least be consistent with the sanction for the most serious instances of misconduct among a number of violations," and note that "it might well be and generally should be greater than the sanction for the most serious misconduct." *Id.* at 78.

¶55 OPC urges us to adopt these standards. And it interprets them as mandating a single, overarching sanction for a range of violations of the rules of professional conduct, or in other words as prohibiting separate sanctions for each of a list of separate charges. Because the district court imposed two separate sanctions in this case (a 30-day sanction for the rule 3.3 violation and a six-month sanction for the rule 3.8(d) violation), moreover, OPC claims error in the sanctions imposed here.

¶56 We see no error. We see little upside and plenty of downside in the proposed requirement of a single, overarching sanction proposed by OPC. The downsides are apparent in our review of the decision below. If the district court had imposed a single, overarching sanction, our review on appeal would have been hampered in a couple of respects: We could not have identified the

---

(continued …)
*re Kline*, 113 A.3d 202 (D.C. 2015) (no sanction due to confusion over the meaning of the rule); *In re Jordan*, 91 P.3d 1168, 1175 (Kan. 2004) (public censure for two counts of not making timely disclosure and for another professional conduct violation); *Cuyahoga Cty. Bar Ass'n v. Gerstenslager*, 543 N.E.2d 491, 491 (Ohio 1989) (public censure); *In re Grant*, 541 S.E.2d 540, 540 (S.C. 2001) (public reprimand). But to our knowledge none of these cases involved a prosecutor deemed to have *intentionally* failed to make a timely disclosure.

separate sanction imposed for the count on which we reverse and remand, and we could not have evaluated the propriety of the sanction imposed on the count on which we affirm. The latter point seems especially significant. Our review as to the propriety of a sanction imposed for a violation of one of our rules of professional conduct would be substantially impaired if we had before us only a single, overarching sanction in a case involving multiple ethics charges.

¶57 For these reasons we reject the OPC's cross-appeal. We affirm the district court's decision to impose separate sanctions for the separate charges at issue in this case—and, indeed, urge future courts to follow the pattern that was followed here, as it will aid our review of attorney discipline cases on appeal.

————————